**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**William Jobe WHALEY, Johnny Brown
Whaley and Thad Lee Whaley,
Defendants-Appellants.**

No. 85–4357.

United States Court of Appeals,
Fifth Circuit.

Jan. 22, 1986.

Spencer & Brown, William C. Spencer, Eugene D. Brown, Jr., Holly Springs, Miss., for Johnny Brown Whaley.

Thad Lee Whaley, pro se.

Farese, Farese & Farese, John B. Farese, Ashland, Miss., James P. Coleman, Ackerman, Miss., for Wm. Jobe Whaley & Thad Lee Whaley.

Glen H. Davidson, U.S. Atty., Thomas W. Dawson, Asst. U.S. Atty., Oxford, Miss., for plaintiff-appellee.

Before BROWN, REAVLEY and HILL, Circuit Judges.

REAVLEY, Circuit Judge:

Jobe L. Whaley and his sons farm and raise cattle on over 11,000 acres of land in northern Mississippi. From 1981 to 1983 several patches of marijuana were grown on that land. Three of the Whaley sons, William Jobe, Johnny Brown and Thad Lee, were convicted of conspiracy to manufacture and possess marijuana with intent to distribute it from June 1981 to September 1983 (count one) and of manufacturing and possessing marijuana with intent to distribute it in August of 1983 (count three). Thad Lee was also convicted of manufacturing and possessing marijuana with intent to distribute it in September of 1981 (count two). We reverse the convictions because of evidence obtained by an illegal search in 1981.

## I.

In September of 1981 a deputy sheriff was driving along a road on Whaley property, returning from an attempt to serve a summons on one of the Whaley employees, when he saw what he thought was marijuana growing close to the road and adjacent to Thad Lee's house. He saw the plants between 3:00 and 4:00 o'clock in the afternoon and left the farm to make a telephone call to the county sheriff. The sheriff arrived at 7:00 o'clock, shortly after sundown. He drove onto the driveway where his car's lights illuminated the plants. Because what he saw was in plain view, the sheriff concluded that he needed no warrant to enter the land and to investigate and remove what he then confirmed to be marijuana.

The parties have agreed that the marijuana was growing in that Fourth Amendment protected space immediately adjacent to the dwelling which is known as the curtilage. The defendants moved to suppress the evidence of this search and seizure, and they then objected to the testimony to that effect during the trial.[1] The trial court denied the motion to suppress and admitted the evidence, and the government urges the correctness of the ruling, on the ground that there was no privacy interest retained in the marijuana plants after they were initially seen in plain view by the officer. The difficulty with this position is that the defendants' objection goes to the search of land (i.e., the curtilage) that could not be entered without a warrant unless

---

1. We could easily question the standing of William Jobe and Johnny Brown to object to this 1981 search, but the government has not raised that question either in the district court or on this appeal. Therefore, we do not consider it. *See United States v. Amuny,* 767 F.2d 1113, 1121–22 (5th Cir.1985).

certain narrow exceptions applied. The objection is not to what the officers could see and identify from a vantage point outside the curtilage of the residence. If the deputy and/or the sheriff had testified that they had identified, from the road or from the driveway, marijuana of a certain description, we would have a different case. Had that testimony been received, our problem would be to decide whether the additional evidence obtained through the unlawful search was so harmful as to require reversal. That was not the testimony, however, given by the deputy and the sheriff. The deputy thought it was marijuana, but he was not certain. The sheriff said that it appeared to be marijuana and he walked on the land to investigate. Then he testified: "After we went in we found what was known to be and what was known to me as marijuana." There was no positive identification of these plants as marijuana until the curtilage had been invaded and searched. The sheriff then testified that the plants were in pots and were being cultivated with the help of fertilizer and a watering hose.

The significance of the uncertainty about the identification bears on the relative harm of the evidence acquired after entry upon the residential property. Whether the identification of the marijuana was positive or not, the mere observation of it from the road or driveway would not justify entry into the home or curtilage to search or to seize property found there. *Fixel v. Wainwright*, 492 F.2d 480 (5th Cir.1974). That would have given probable cause to support a warrant. Exigency could have justified a warrantless search, but the facts suggest no exigency. Several hours passed from the time the deputy sighted the plants until the sheriff arrived. No one else was around the home during the time and there is no evidence that anyone but the officers knew of the investigation until the sheriff called Jobe Whaley to come to the scene after the search of the premises had been completed. Furthermore, the record establishes that the sheriff searched the premises without a warrant because he thought it was unnecessary and not be-

cause he lacked the time or opportunity to obtain a warrant. Exigency was not a motivation for the warrantless search. *See United States v. Webster*, 750 F.2d 307, 326 (5th Cir.1984).

Our disagreement with the district court and government counsel is over the reach of the "plain view" doctrine. When an intrusion into protected property is justified, either by a warrant to search for certain objects or by an exception to the warrant requirement, the police may seize objects open to their view. With the justification for their intrusion because of, for example, "hot pursuit" of a fleeing suspect or an immediate imperative to apprehend what with probable cause they believe to be a violator or contraband, the police need not ignore evidence they inadvertently come upon. It does not follow that contraband in plain view, and that alone, justifies the initial intrusion.

> Incontrovertible testimony of the senses that an incriminating object is on premises belonging to a criminal suspect may establish the fullest possible measure of probable cause. But even where the object is contraband, this Court has repeatedly stated and enforced the basic rule that the police may not enter and make a warrantless seizure.

*Coolidge v. New Hampshire*, 403 U.S. 443, 468, 91 S.Ct. 2022, 2039, 29 L.Ed.2d 564 (1971).

■ If contraband is seen by an officer looking through the window of a house or automobile, the lack of any opportunity to obtain a warrant before the object is destroyed or begone may justify the initial intrusion and search. *United States v. Shima*, 545 F.2d 1026 (5th Cir.1977) (sighted powder appearing to be narcotic justified entry into apartment where further delay in the receipt of word from their captured co-conspirator would alarm suspects and cause them to flee); *United States v. Reed*, 733 F.2d 492, 502 (8th Cir. 1984) (probable cause and exigent circumstances justified warrantless entry into premises when defendants' criminally suggestive behavior was seen by officer); *United States v. Conner*, 478 F.2d 1320

(7th Cir.1973) (officers who saw through open garage door stolen automobiles being dismantled could enter garage because delay would allow destruction or removal of the cars).

There is language in *Illinois v. Andreas*, 463 U.S. 765, 103 S.Ct. 3319, 77 L.Ed.2d 1003 (1983), and *Texas v. Brown*, 460 U.S. 730, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983), that might raise doubt about the rule that plain view *alone* cannot justify an initial warrantless intrusion to search and seize. In *Andreas* the Court held that the reopening of a sealed container, in which contraband drugs had been discovered in an earlier lawful border search, was permissible without a warrant. The Court explained that there is no search subject to the Fourth Amendment Warrant Clause if there is no intrusion upon a legitimate expectation of privacy. The opinion written by Chief Justice Burger for six members of the Court states:

> This conclusion is supported by the reasoning underlying the "plain view" doctrine. The plain view doctrine authorizes seizure of illegal or evidentiary items visible to a police officer whose access to the object has some prior Fourth Amendment justification and who has probable cause to suspect that item is connected with criminal activity. *Texas v. Brown*, 460 U.S. 730, at [737–38] and n. 4, 103 S.Ct. 1535, at 1540 and n. 4, 75 L.Ed.2d 502 (plurality opinion); *id.* at [744–45], 103 S.Ct. at 1544 (POWELL, J., concurring); *id.* at [750], 103 S.Ct. at 1547 (STEVENS, J., concurring). The plain view doctrine is grounded on the proposition that once police are lawfully in a position to observe an item first-hand, its owner's privacy interest in that item is lost; the owner may retain the incidents of title and possession but not privacy. That rationale applies here; once a container has been found to a certainty to contain illicit drugs, the contraband becomes like objects physically within the plain view of the police, and the claim to privacy is lost. Consequently, the subsequent reopening of the con-

tainer is not a "search" within the intendment of the Fourth Amendment.
463 U.S. at 771–72, 103 S.Ct. at 3324 (footnote omitted).

At the outset of that statement, it is said that "access to the object" must be justified before seizure of visible objects is authorized. Then, however, the Court explains that privacy interest is lost by the observation from a position where the officers are entitled to be, and where the claim to privacy is lost there is no longer Fourth Amendment protection from search.

If the latter expression is taken to apply to all circumstances, the view is supported that the Fourth Amendment objection to the search of the Whaley residential curtilage was removed after the sheriff and his deputy observed from the road what they considered to be marijuana. We do not believe the Court intended this effect. The Court in *Andreas* was dealing with the privacy interest in a particular item, a container that had previously been lawfully opened by customs officers and was known to have contained illicit drugs. It would take more to convince us that the Court has authorized a warrantless search of all residences and curtilages upon the mere off-premises sighting of on-premises contraband.

In *Texas v. Brown* the officer saw a balloon containing a powdery substance within an automobile which he had lawfully stopped. All of the justices agreed that the warrantless seizure of the balloon was justified. While the plurality opinion did not say that the intrusion into the automobile to seize the balloon, after the sighting, was justified by the mobility of the vehicle and the exception for vehicles due in part to that exigency of mobility, *see Carroll v. United States*, 267 U.S. 132, 153, 45 S.Ct. 280, 285, 69 L.Ed. 543 (1925); *Arkansas v. Sanders*, 442 U.S. 753, 760–61, 99 S.Ct. 2586, 2591, 61 L.Ed.2d 235 (1979), five concurring justices do allude to the essential element of exigency or express satisfaction with the articulation of *Coolidge*. 460 U.S. at 745 n. 1, 746, 103 S.Ct. at 1544 n. 1, 1545 (Powell, J., concurring); *id.* at 748–49, 103

S.Ct. at 1546 (Stevens, J., concurring). Furthermore, we do not read the plurality opinion to support the appellants' argument. Justice Rehnquist cites *Payton v. New York*, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980), where the distinction is made between the seizure of property in plain view where there is no invasion of privacy and the situation where the sighted contraband is "situated on private premises to which access is not otherwise available for the seizing officer." 460 U.S. at 737–38, 103 S.Ct. at 1540 (quoting *Payton*, 445 U.S. at 587, 100 S.Ct. at 1380 (quoting *G.M. Leasing Corp. v. United States*, 429 U.S. 338, 354, 97 S.Ct. 619, 629, 50 L.Ed.2d 530 (1977))).

## II.

■ The government finally argues that the evidence of the search should be admitted under the good faith exception to the exclusionary rule. *See United States v. Williams*, 622 F.2d 830 (5th Cir.1980), *cert. denied*, 449 U.S. 1127, 101 S.Ct. 946, 67 L.Ed.2d 114 (1981). The exception is not devised for the unlawful conduct of all officers who mean well. The good faith belief must be grounded in objective reasonableness. *Id.* at 841 n. 4a. The mistake of an operative fact or an error of technical nature may not bar admission of evidence. *Id.* at 846; *United States v. Mahoney*, 712 F.2d 956, 960 (5th Cir.1983). The mistake here was on a basic point of established law. To extend the exception so far as to allow evidence of a clearly unlawful warrantless search of residential property would put too great a premium on ignorance of the law and would virtually terminate the exclusionary rule. This is neither our wish nor our prerogative.

## III.

■ The admission of evidence that marijuana had been cultivated adjacent to Thad Lee's house and beside the road on which the defendants traveled, as early as June of 1981, requires a reversal of all of the convictions because we are unable to say as to any count or defendant that the evidence was harmless beyond a reasonable doubt. *See Chapman v. State of California*, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967). For the first count, which alleged the conspiracy from 1981 to 1983, this was the anchor of the beginning of the conspiracy. Even as to the third count, alleging the manufacture and possession in 1983 when several patches of marijuana were found and removed, the harm of the 1981 evidence cannot be discounted. There was a square conflict in the testimony, and the witnesses who testified about marijuana transactions with the defendants were often inconsistent and, to convince the jurors, may have needed the corroboration of this 1981 episode. Conceivably the jury could have disbelieved the government's witnesses who were not peace officers and then accepted the testimony of the defendants that they were unaware of the marijuana found in 1983, but it would have been much more difficult for the jurors to believe that the defendants had been unaware of marijuana for so long, especially after a crop had been cultivated by one of the defendant-brothers in 1981.

## IV.

■ For purposes of the retrial, we must say that there is no merit to the other points raised by the defendants. There is no lack of specificity in the 1983 search warrant, which described large sections of land which included the farms of other owners, but which specifically named the "Jobe Whaley and Sons farm" in those sections. The location of this farm was well known to the magistrate and to the officers. The description identified the place to be searched to the officers and, under the circumstances, was not likely to lead to the search of any property other than that of the Whaley farm. *See Steele v. United States*, 267 U.S. 498, 503, 45 S.Ct. 414, 416, 69 L.Ed. 757 (1925); *United States v. Hassell*, 427 F.2d 348 (6th Cir. 1970). Furthermore, the 1983 marijuana patches were all in open fields where no warrant was necessary. *Oliver v. United*

*States,* 466 U.S. 170, 104 S.Ct. 1735, 80 L.Ed.2d 214 (1984).

The defendants complain about the admission of hearsay of a co-conspirator without independent evidence of the conspiracy as is required by *United States v. James,* 590 F.2d 575 (5th Cir.), *cert. denied,* 442 U.S. 917, 99 S.Ct. 2836, 61 L.Ed.2d 283 (1979). And Johnny Brown contends that there was insufficient evidence to warrant his conviction. We disagree with these contentions. The record contains testimony by witnesses that implicate each of the defendants, who lived and worked in close proximity with each other, and often in proximity to the growing or stored marijuana. The defendants insist that, except for the officers who seized the marijuana, the witnesses were not worthy of belief. That question of credibility, however, was one for the jury to decide.

The convictions on all counts for each of the three defendants are reversed. The case is remanded to the district court.

REVERSED and REMANDED.