**UNITED STATES of America**

v.

**Juan PALACIOS, Sr.**

**Crim. No. L–87–206.**

United States District Court,
S.D. Texas,
Laredo Division.

Aug. 3, 1987.

Oscar J. Pena, Sr., Laredo, Tex., for Palacios.

Carlos Martinez, U.S. Atty., for U.S.

## MEMORANDUM AND ORDER

KAZEN, District Judge.

Pending is Defendant's motion to suppress. The Defendant was arrested at approximately 7:20 a.m. at his residence at 4311 Flores Street in Laredo. He was arrested pursuant to a warrant issued by United States Magistrate Notzon ordering the arrest of Juan Palacios, Jr. It is undisputed that the officers arrested the wrong man. This Defendant is the father of the person named in the warrant.

The Magistrate's warrant gives no address or description of Juan Palacios, Jr. The officers did have, however, a photocopy of a drivers license containing a photograph of the suspect. The license also gave the address of 4311 Flores for Juan Palacios, Jr.

ATF Agent Lawrence and Laredo Police Officer Perez went to 4311 Flores in the early morning hours, knocked on the door, and advised that they were there to execute the arrest warrant. Perez insists that he specified they were looking for Juan Palacios, Jr. The Defendant maintains that the officers simply asked if he was "Juan Palacios." The Defendant responded that he was the man and was then apparently told that he was under arrest. Because he was in shorts, he asked time to get dressed. The agents followed him to his bedroom, where they saw a .38 caliber pistol in plain view on top of a dresser. Agent Lawrence asked the Defendant if the gun was his and he acknowledged that it was. He also asked the Defendant if he had ever been previously arrested and the Defendant answered that he was on probation for a previous marihuana violation. The Defendant was subsequently handcuffed and taken out to the agents' car. They drove the Defendant about ½ block down the street, stopped, read him his Miranda rights, and explained the nature of the charges allegedly pending against him, but which were really pending against his son.

It was at this point that Officer Perez began to doubt the Defendant's identity. The two officers, apparently along with others, had gathered at a central meeting place earlier that morning to be briefed on the various warrants that would be executed that day. On that occasion, Perez acknowledged that he had "glanced" at the photograph that had accompanied this warrant. Now that the Defendant had been arrested and placed in the automobile, Perez again looked at the photograph and could readily see that it was not a picture of the Defendant. The Defendant was promptly returned to his house and the officers proceeded to arrest Juan Palacios, Jr. at a residence at 4316 Flores, across the street from 4311 Flores. The entire episode would have ended there as an unfortunate mistake, except that the Government decided more than 7 months later to file an indictment against this Defendant for being a convicted felon in possession of a weapon, namely the .38 caliber revolver found in the bedroom that morning.

■ It is obviously undisputed that the officers arrested this Defendant without an arrest warrant and without probable cause to believe that he had committed any crime. Accordingly they had no legal right to enter his home, question him, or view any objects in his bedroom. The question becomes whether the discovered evidence can nevertheless be admitted at trial under the emerging "good faith" exception to the exclusionary rule.

■ In cases defining that exception, the United States Supreme Court has consistently intimated that the mistake must be objectively reasonable in order to justify the exception. The most recent illustration of this concept is *Maryland v. Garrison*, —— U.S. ——, 107 S.Ct. 1013, 94 L.Ed.2d 72 (1987). There police officers obtained a warrant to search the person of one McWebb and a certain premises described as a "third floor apartment." When they applied for and executed the warrant, they reasonably believed that there was only one apartment on the described premises. In fact, the third floor was divided into two apartments. They ultimately searched Garrison's apartment and found incrimina-

ting evidence, all the while believing they were searching McWebb's apartment. The Supreme Court found the evidence admissible, in recognition of the need to allow "some latitude for honest mistakes." 107 S.Ct. at 1018. Throughout the opinion, however, the court stressed that the error was a "reasonable" one, and indicated that if the officers had known "or should have known" that the premises actually contained two apartments, the search would have been invalid. *Id.*[1] The court relied on the earlier opinion of *Hill California,* 401 U.S. 797, 91 S.Ct. 1106, 28 L.Ed.2d 484 (1971), a case involving the arrest of a wrong person, a situation similar to the instant case. In *Hill,* the court concluded that the officers had "a reasonable, good faith belief" that the individual they arrested was the person they were seeking. 401 U.S. at 802, 91 S.Ct. at 1110. The court specifically noted that the officers had "a verified description" of the suspect and that the erroneously arrested individual "fit the description" of the suspect. 401 U.S. at 803, 91 S.Ct. at 1110.

The ultimate issue in this case, therefore, is whether the mistake was a reasonable one. The Court concludes that it was not. Both officers had an opportunity to look at a photograph of Juan Palacios, Jr. before they even journeyed to his purported residence. Agent Lawrence acknowledged that he examined the drivers license, but that he did not pay attention to the "details" on it. He further acknowledged, however, that he believed he was looking for a person whose age would be in the twenties. Perez also looked at the photograph at the original briefing session, but says that he only "glanced" at it. There is virtually no resemblance between this Defendant and the person in the photograph. The Defendant is obviously a much slimmer and older man. There is admittedly testimony, albeit disputed, that this Defendant reacted affirmatively to Officer Perez' statement that he was looking for "Juan Palacios, Jr." Based on the totality of the circumstances, including the obvious inattention to detail displayed by these offi-

cers, the Court is inclined to accept the Defendant's contrary version. It seems highly unlikely that this Defendant would have acknowledged himself to be Juan Palacios, Jr. There is a subsidiary conflict in the evidence as to whether this Defendant opened the door for the agents or whether the door was first opened by a female. If the latter is true, it could have been that the officers stated to the female that they were looking for Juan Palacios, Jr., but the Court cannot accept the proposition that the officers stated such to this Defendant.

The agents were looking for a man in his twenties, they had ample opportunity to observe a photograph of the suspect, and yet they arrested an individual bearing virtually no resemblance to the suspect and obviously not being in his twenties. This is not a reasonable mistake, and the motion to suppress is GRANTED.

---

1. In a related context, the Fifth Circuit has stated that the good faith exception is not meant for officers "who mean well." Instead, the good faith belief "must be grounded in objective reasonableness." *United States v. Whaley,* 781 F.2d 417, 421 (5th Cir.1986).