**UNITED STATES of America,**
**Plaintiff–Appellant,**

v.

**Mario DE LEON–REYNA,**
**Defendant–Appellee.**

No. 89–2157.

United States Court of Appeals,
Fifth Circuit.

April 20, 1990.

---

Jeffrey A. Babcock, Paula C. Offenhauser, Asst. U.S. Attys., Henry K. Oncken, U.S. Atty., Houston, Tex., for plaintiff-appellant.

Timothy L. Jackson, Houston, Tex., for defendant-appellee.

Before THORNBERRY, JOHNSON, and JOLLY, Circuit Judges.

THORNBERRY, Circuit Judge:

This case involves the district court's suppression of evidence obtained following a warrantless investigatory stop made in good faith, but justified on factual information that was erroneous due to police negligence. Finding that the stop was in violation of the fourth amendment and that the good faith exception to the exclusionary rule does not apply, we affirm.

### I.

On December 6, 1988, U.S. Border Patrol agent Ernesto Martinez was monitoring traffic on Highway 2050 for indications of alien and drug smuggling. During this time, Martinez noticed what appeared to be a welding truck, except that it carried no welding equipment. Instead, the truck was carrying a stack of plywood bound by nylon and metal straps. Martinez testified that he had read a government publication which stated that one method for concealing contraband was to create a compartment inside a stack of plywood. This publication was not introduced into evidence. As the truck passed by, Martinez observed that the driver appeared very nervous. He also noted that the truck appeared heavily loaded, was dragging a shock absorber, and "bouncing almost erratically." His suspicion aroused, Martinez began to follow the truck.

Martinez radioed the truck's license plate numbers "WM–1438" to headquarters. The dispatcher understood Martinez to say "WN–1438," however, and accordingly radioed back that the plates belonged to a 1973 Ford dump truck. Because the truck he was following was a 1982 Chevrolet pickup truck, Martinez surmised that some sort of illicit activity was afoot, and he pulled the truck over.

Defendant Mario De Leon–Reyna was driving the vehicle. Officer Martinez first inquired about defendant's citizenship, to which defendant answered that he was a resident alien. Defendant also produced a valid resident alien card. After asking defendant a series of questions about his intentions, Martinez suspected that the defendant was fabricating a story. Martinez obtained the defendant's consent to search the truck, after which he located a large, freshly-welded compartment beneath the vehicle. Martinez asked the defendant about the compartment, but the defendant denied any knowledge of tampering with the vehicle. Suspecting illegal drugs, Martinez radioed for a drug-sniffing dog.

After a short time, Martinez asked the defendant if he had proof of vehicle registration. The defendant produced the title to the truck, which matched the truck's license plates. Martinez radioed the dispatcher to run another check on the license plates. This time he received the correct

information, and the license plate number matched the truck. Sometime before the dog arrived,[1] Martinez arrested the defendant and placed him in the back of his patrol car.

When the dog arrived, it alerted to the compartment, and approximately 1,200 pounds of cocaine was discovered inside a cavity created in the plywood. Defendant was indicted for possession with intent to distribute cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A). Defendant filed a motion to suppress the evidence, claiming that because the license plate registration check was erroneous, the stop of his vehicle was without warrant or probable cause.

The district court conducted a hearing on the motion to suppress. The dispatcher, Marjorie S. Roy, testified that radio communications with its agents is often strained at long distances, and that the policy for communicating license plate numbers is to use code words so that similar sounding letters would not be confused. The government concedes that Martinez was negligent for failing to follow proper radio procedures.

Based on this testimony, the district court granted the motion to suppress, holding that "the Government cannot justify a stop based on erroneous information when the error is due to the negligence of its own employees." Once the registration error was eliminated, the court found that the remaining circumstances did not justify a stop. Although the district court did not question the good faith of the officer in making the stop, it noted that "as yet there is no precedent extending a good-faith exception to erroneous factual information relied upon by officers in making a warrantless stop." The government brought this appeal.

**1.** The record is not clear as to whether the defendant was arrested before or after the second registration check.

**2.** We assume that Officer Martinez was negligent in failing to use code words for letters in his transmission, but we note that it is irrelevant whether he or the dispatcher was the party

## II.

■ The government first argues that a warrantless stop of a vehicle, based upon a good faith error, is reasonable and valid under the fourth amendment. The fourth amendment's protection against unreasonable searches and seizures applies to brief investigatory stops of vehicles. *United States v. Cortez,* 449 U.S. 411, 417, 101 S.Ct. 690, 694–95, 66 L.Ed.2d 621 (1981); *United States v. Brignoni–Ponce,* 422 U.S. 873, 878, 95 S.Ct. 2574, 2578, 45 L.Ed.2d 607 (1975). In order to satisfy the fourth amendment, "[a]n investigatory stop must be justified by some objective manifestation that the person stopped is, or is about to be, engaged in criminal activity." *Cortez,* 449 U.S. at 417, 101 S.Ct. at 695; *see also Brignoni–Ponce,* 422 U.S. at 884–85, 95 S.Ct. at 2582; *Terry v. Ohio,* 392 U.S. 1, 16–19, 88 S.Ct. 1868, 1877–79, 20 L.Ed.2d 889 (1968). "In particular, ... law enforcement agents may briefly stop a moving automobile to investigate a reasonable suspicion that its occupants are involved in criminal activity." *United States v. Hensley,* 469 U.S. 221, 226, 105 S.Ct. 675, 679, 83 L.Ed.2d 604 (1985). The determination of "reasonable suspicion" involves the consideration of the totality of the circumstances, including the collective knowledge of all the officers in assessing the facts. *E.g., United States v. Shaw,* 701 F.2d 367, 377 n. 4 (5th Cir.1983), *cert. denied,* 465 U.S. 1067, 104 S.Ct. 1419, 79 L.Ed.2d 744 (1984).

Although the circumstances that developed after the stop appear sufficient to justify a search of defendant's vehicle, at issue here is the propriety of the initial stop. It is certainly true that if the registration information provided over the radio was correct, then sufficient foundation for a brief investigatory stop existed. It is undisputed, however, that the registration information was incorrect due to error on the part of the government.[2] Further-

at fault. The important fact is that the government was negligent in failing to use proper radio procedures, and that this negligence caused the error that was the primary justification for the stop.

more, the government does not attempt to argue that the circumstances apart from the registration information are sufficient enough to justify an investigatory stop.[3]

Thus, we are left with the primary justification for the stop: a registration report that was completely erroneous due to the officer's negligence in transmitting the vehicle's license plate numbers. We agree with the district court that reasonable suspicion cannot be grounded upon this type of information, and thus the totality of the circumstances fails to provide an articulable, objective basis for the stop.

█ The government emphasizes Officer Martinez's good faith reliance on the registration report. Although an officer is entitled to rely upon information provided by other officers, the collective information known to all the officers involved must be sufficient to amount to a reasonable suspicion. *See United States v. Webster,* 750 F.2d 307, 323 (5th Cir.1984), *cert. denied,* 471 U.S. 1106, 105 S.Ct. 2340, 85 L.Ed.2d 855 (1985). *See generally* 2 W. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment* § 3.5(b) (2d ed.1987); 3 *Id.* § 9.3(f), at 487–89. In *Whiteley v. Warden,* 401 U.S. 560, 568–69, 91 S.Ct. 1031, 1037, 28 L.Ed.2d 306 (1971), the Supreme Court excluded evidence obtained during an arrest made in good-faith reliance on a police bulletin, because the collective knowledge of the police who issued the bulletin was insufficient to support probable cause. The Court noted that "an otherwise illegal arrest cannot be insulated from challenge by the decision of the investigating officer to rely on fellow officers to

make the arrest." *Id.*[4] On the other hand, in *United States v. Hensley,* 469 U.S. 221, 229–33, 105 S.Ct. 675, 681–82, 83 L.Ed.2d 604 (1985), the Supreme Court upheld evidence seized during a *Terry* stop even though the arresting officer relying in good faith on a "wanted flyer" did not know the factual basis of suspicion, because the "police who *issued* the flyer or bulletin possessed a reasonable suspicion justifying a stop."[5] The common lesson of *Whiteley* and *Hensley* is that the collective knowledge of all of the officers involved must provide sufficient grounds to justify a reasonable suspicion of criminal activity.

█ Here, there is no doubt that the collective knowledge of the officers failed to provide a sufficient basis for reasonable suspicion. Once the specious registration report is removed from the picture, Officer Martinez lacked sufficient grounds for a stop. Similarly, the dispatcher who issued the report had no basis for a reasonable suspicion. The government cannot bootstrap reasonable suspicion from an officer's good faith reliance on a radio report when the issuing agent or dispatcher lacked reasonable suspicion. The issuance of an incorrect registration report due to police negligence is no different from the distribution of a wanted flyer without reasonable suspicion in *Whiteley.* Although reasonable suspicion is not defeated by an after-the-fact showing that the information supporting reasonable suspicion was false, nevertheless the police may not rely upon incorrect or incomplete information when they are the ones responsible for that

---

3. Those circumstances include the defendant's failure to make eye contact, the fact that the welding truck was heavily loaded, carrying plywood, bouncing, and dragging a shock absorber. The district court appears correct in finding that these circumstances do not provide adequate indication of criminal activity.

4. *See also Webster,* 750 F.2d at 323–24 (excluding evidence from search by arresting officer who relied solely on impermissibly broad radio dispatch); *United States v. Ashley,* 569 F.2d 975, 983 (5th Cir.) (noting that "if the directing officer does not have probable cause, the government may not bootstrap probable cause from the innocent act of a police officer following an

erroneous direction"), *cert. denied,* 439 U.S. 853, 99 S.Ct. 163, 58 L.Ed.2d 159 (1978); *United States v. Robinson,* 536 F.2d 1298, 1299–1300 (9th Cir.1976) (excluding evidence where neither stopping officer nor those who issued radio dispatch could articulate reasonable suspicion).

5. *See also Charles v. Smith,* 894 F.2d 718, 725 (5th Cir.1990) (upholding arrest where arresting officer lacking knowledge of probable cause carried out directions of officer possessing probable cause); *Ashley,* 569 F.2d at 983 (upholding arrest despite arresting officer's lack of personal knowledge because collective knowledge of police in communication with agent provided probable cause).

faulty information. 2 W. LaFave, *supra,* § 3.5(d), at 21–22. Therefore, because neither Officer Martinez nor the dispatcher had grounds for reasonable suspicion, we hold that an investigatory stop in good-faith reliance on a radio report that is erroneous due to government negligence does not satisfy the fourth amendment.

### III.

In reaching the foregoing conclusion, we distinguish *Hill v. California,* 401 U.S. 797, 91 S.Ct. 1106, 28 L.Ed.2d 484 (1971), and *Maryland v. Garrison,* 480 U.S. 79, 107 S.Ct. 1013, 94 L.Ed.2d 72 (1987). The government relies on these cases to argue that a good-faith warrantless stop based upon "reasonably mistaken" information satisfies the fourth amendment's reasonableness standard. In *Hill,* the Supreme Court upheld the legality of a search of defendant Hill's apartment incident to the arrest there of Miller, who was found in Hill's apartment, because "the police had probable cause to arrest Hill and ... the arresting officers had a reasonable, good faith belief that the arrestee Miller was in fact Hill." *Hill,* 401 U.S. at 802, 91 S.Ct. at 1110. In *Garrison,* the police had obtained a valid search warrant for the person Lawrence McWebb and "the premises known as 2036 Park Avenue third floor apartment." When they arrived and began to search the apartment, they reasonably believed that there was only one apartment on the third floor. Only after their search revealed contraband in Garrison's apartment did the officers discover that the third floor actually consisted of two apartments, one occupied by Garrison, the other by McWebb. In upholding the seizure of the contraband, the Court first found that the search warrant was valid when issued, since the affiant reasonably believed that the third floor was one apartment. *Garrison,* 480 U.S. at 84–86, 107 S.Ct. at 1017–18. The Court then held that the "officers' failure to realize the overbreadth of the warrant was objectively understandable and reasonable," given the fact that McWebb supplied the key to the entire third floor apartment and that neither McWebb nor Garrison informed the officers of the separate apart-

ments. *Id.* at 87–88 & n. 12, 107 S.Ct. at 1018–19 & n. 12.

*Hill* and *Garrison* are easily distinguishable from the case before us. First, in both cases the Court first determined if there was constitutionally valid justification for a search (i.e., a valid warrant, probable cause, or reasonable suspicion) before it considered the reasonableness of the search. In *Hill,* it was undisputed that the officers had probable cause to arrest Hill and conduct a search incident to that arrest; the good faith error occurred in conducting the search. *Hill,* 401 U.S. at 799, 91 S.Ct. at 1108. Similarly, in *Garrison,* the Court was careful first to point out that the warrant was valid when it was issued; once again the error occurred in executing the search pursuant to the warrant. *Garrison,* 480 U.S. at 84–86, 107 S.Ct. at 1017–18. Here, the error did not occur in conducting a search pursuant to a reasonable suspicion; rather, the error went to the very foundation for reasonable suspicion itself.

Second, *Hill* and *Garrison* are distinguishable in that the officers' errors in those cases were objectively reasonable. *See Hill,* 401 U.S. at 804, 91 S.Ct. at 1111 (stating that the officers' mistake was "understandable and the arrest a reasonable response to the situation"); *Garrison,* 480 U.S. at 88, 107 S.Ct. at 1019 (finding that the officers' mistake was "objectively understandable and reasonable"). Although the Court has recognized "the need to allow some latitude for honest mistakes," it requires that the " 'mistakes must be those of reasonable men, acting on facts leading sensibly to their conclusions of probability.' " *Garrison,* 480 U.S. at 86–87 & n. 11, 107 S.Ct. at 1018 & n. 11 (quoting *Brinegar v. United States,* 338 U.S. 160, 176, 69 S.Ct. 1302, 1311, 93 L.Ed. 1879 (1949)).

The district court found that the mistake here resulted not from reasonable conduct but from negligence. Under these circumstances, we find it oxymoronic for the government to suggest that an error made through negligence is "reasonable." We also note that this error is not insignificant, because it served as the primary justifica-

tion for the stop. Given these facts, we cannot agree that such negligent police conduct is reasonable under the fourth amendment.

## IV.

Finding that the stop violated the fourth amendment, we now consider whether suppression of the evidence is appropriate considering the good faith exception to the exclusionary rule. *See United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). Under this exception, "evidence is not to be suppressed under the exclusionary rule where it is discovered by officers in the course of actions that are taken in good faith and in the reasonable, though mistaken, belief that they are authorized." *United States v. Williams,* 622 F.2d 830, 840 (5th Cir.1980) (en banc), *cert. denied,* 449 U.S. 1127, 101 S.Ct. 946, 67 L.Ed.2d 114 (1981). Although some circuits have limited the application of the good faith exception to cases involving warrants issued by a magistrate, this circuit applies the exception to warrantless searches as well. *See Williams,* 622 F.2d at 840 n. 1; *United States v. Whaley,* 781 F.2d 417, 421 (5th Cir.1986) (applying good faith exception to warrantless search of residential property, but excluding evidence since error was on a basic point of established law); *cf. United States v. Comstock,* 805 F.2d 1194, 1210 n. 18 (5th Cir.1986) (noting that *Williams* "imposed no such requirement of reliance on a magistrate"), *cert. denied,* 481 U.S. 1022, 107 S.Ct. 1908, 95 L.Ed.2d 513 (1987).

■ Given the district court's uncontested determination that Officer Martinez's mistake was made in good faith, the main issue is whether his good faith belief was grounded in objective reasonableness. *United States v. Mahoney,* 712 F.2d 956, 961 (5th Cir.1983), *cert. denied,* 468 U.S. 1220, 104 S.Ct. 3590, 82 L.Ed.2d 887 (1984). The government argues that the evidence should not be excluded unless the officer's conduct or belief was dishonest or reckless. But this argument ignores the overwhelming weight of authority which stresses that the officer's belief and conduct must be objectively reasonable. *See, e.g., Leon,* 468 U.S. at 918–21 & n. 20, 104 S.Ct. at 3418–19 & n. 20 (emphasizing that the standard adopted is objective reasonableness); *Massachusetts v. Sheppard,* 468 U.S. 981, 991, 104 S.Ct. 3424, 3429, 82 L.Ed.2d 737 (1984) (refusing to exclude evidence because the "police conduct in this case clearly was objectively reasonable and largely error-free"); *Mahoney,* 712 F.2d at 961 (noting that the officer's subjective good faith must be grounded in objective reasonableness); *Williams,* 622 F.2d at 841 n. 4 (requiring that the officer's "belief, in addition to being held in subjective good faith, must be grounded in objective reasonableness"). Although these cases involved reliance on a warrant issued by a magistrate, a reasonableness standard is all the more appropriate in no-warrant cases, since the neutral and detached role of the magistrate is unavailable to assist the officers in their probable-cause determination. For the same reason, a higher level of scrutiny of the officer's conduct is also appropriate. *Compare Leon,* 468 U.S. at 913–17, 922–24, 104 S.Ct. at 3415–18, 3420–21 (suggesting that deep scrutiny of searches pursuant to a warrant is rarely necessary given the magistrate's neutral and detached role).

In contrast, those cases recognizing a less stringent recklessness standard do not involve constitutional violations. For example, in *United States v. Comstock,* the good faith standard we required for violations of Rule 41(a) of Federal Rule of Criminal Procedure was that the officers not act in reckless disregard or conscious indifference to whether the rule applied and was complied with. *Comstock,* 805 F.2d at 1207. The rationale was that a less stringent standard was appropriate since there was no unconstitutional conduct to deter. We distinguished, however, cases such as the one before us by recognizing that "objective reasonableness [is] required to avoid suppression where the Fourth Amendment [has] been violated." *Id.*

## V.

■ Having determined that an officer's conduct must be objectively reasonable in

order for the good faith exception to apply in a no-warrant case, we now decide whether the exception applies in this case. The Supreme Court has stressed that the primary purpose of the exclusionary rule is to deter future police misconduct. *E.g., Illinois v. Krull,* 480 U.S. 340, 346–47, 107 S.Ct. 1160, 1165, 94 L.Ed.2d 364 (1987); *Leon,* 468 U.S. at 916, 104 S.Ct. at 3417. We too have noted that the exclusionary rule is a "judge-made rule ... justified in the illegal search context only by its deterrence of future police misconduct." *Williams,* 622 F.2d at 841–42. As with any remedial device, application of the exclusionary rule is limited to those situations in which its remedial purpose is effectively advanced. *Krull,* 480 U.S. at 347–48, 107 S.Ct. at 1166. Consequently, we will not apply the exclusionary rule to those contexts where it does not effectively deter official misconduct. *Williams,* 622 F.2d at 842.

■ Considering the facts before us, we reiterate the determination that the officers' conduct was not objectively reasonable, but negligent. Cases applying the good faith exception in other contexts have relied on the fact that the police conduct under scrutiny was objectively reasonable, and thus there was no wrongful conduct to deter. As the Court in *Leon* explained, where the officer's conduct is objectively reasonable,

> excluding the evidence will not further the ends of the exclusionary rule in any appreciable way; for it is painfully apparent that ... the officer is acting as a reasonable officer would and should act in similar circumstances. Excluding the evidence can in no way affect his future conduct unless it is to make him less willing to do his duty.

*Leon,* 468 U.S. at 920, 104 S.Ct. at 3419 (quoting *Stone v. Powell,* 428 U.S. 465, 539–40, 96 S.Ct. 3037, 3073–74, 49 L.Ed.2d 1067 (1976) (White, J., dissenting)).

Here, however, there was wrongful conduct. A reasonable officer would have and should have followed the established radio procedure policy of using code names for letters—a policy which was established pre-

cisely so that similar sounding letters would not be confused. The result of failing to use the proper procedure is quite predictable: there is a substantial likelihood that miscommunication will result and that the registration information will not match the vehicle. At a minimum, this error could give rise to a false suspicion that criminal activity is afoot, and thus lead to arbitrary and intrusive investigatory stops. Furthermore, the officer's negligent conduct did not have a minor impact; rather it resulted in the erroneous radio report that served as the primary ground for the stop. Finally, we note that future conformity with this radio procedure is not burdensome and will ensure that future police stops based on vehicle registration reports are not arbitrary. For these reasons, we find that the purpose of the exclusionary rule is furthered by suppression, since it will "alter the behavior of individual law enforcement officers or the policies of their departments" and thereby safeguard fourth amendment rights. *Leon,* 468 U.S. at 918, 104 S.Ct. at 3418.

## VI.

We are not unaware of the costs of withholding reliable information from the truthseeking process. We recognize, however, that

> [t]he cost to the truthseeking process of evidentiary exclusion invariably is perceived more tangibly in discrete prosecutions than is the protection of privacy values through deterrence of future police misconduct. When defining the scope of the exclusionary rule, however, we must focus on systematic effects of proposed exceptions to ensure that individual liberty from arbitrary or oppressive police conduct does not succumb to the inexorable pressure to introduce all evidence, no matter how obtained, in each and every criminal case.

*James v. Illinois,* — U.S. —, 110 S.Ct. 648, 655, 107 L.Ed.2d 676 (1990). Given the fact that negligent errors of this sort are intrusive and yet easily preventable, we refuse to sanction them by not applying the exclusionary rule, and we conclude that the

district court properly suppressed the evidence. Therefore, the judgment of the district court is

AFFIRMED.