[No. 2605–2.   Division Two.   February 10, 1978.]

THE STATE OF WASHINGTON, *Appellant,* v. MICHAEL R. McCORD, ET AL, *Respondents.*

*Curtis M. Janhunen, Prosecuting Attorney*, for appellant.

*John L. Farra*, for respondents.

SOULE, J.—The State appeals from an order suppressing evidence.

On the morning of July 13, 1976, about 5:30 a.m., Special Deputy Sheriff Byrd called the office of the Sheriff of Grays Harbor County and reported that as he was approaching Camp Grisdale, he saw a U–Haul truck with a red car behind it, leaving that area. Without articulating any other facts he stated to the recipient of the call that he suspected they were hauling cedar.

This information was relayed to Deputy Sheriff Ian Kilcup, who immediately proceeded up the West Wynooche Road in an effort to intercept the truck and car. He was successful. About 5:48 a.m. he encountered the vehicles approaching him. After they passed, he turned around and started to follow.

Deputy Kilcup testified that upon establishing contact the red car began to slow down and the truck appeared to

increase its speed slightly. Thereupon he passed the red car and stopped the truck, which bore New York license plates. Deputy Kilcup acknowledged that no traffic violation was involved in the stop. He first asked for identification. A valid driver's license was produced. He then asked the driver what he and his companion were doing up there at this hour of the morning. The driver said, "Hauling a few cedar blocks." The deputy then asked if he could look in the back of the truck and the driver consented. Further questioning followed. A cedar–hauling permit was produced for an area 12 miles from Shelton. Because there were too many copies, its validity was doubted by the deputy and an arrest for hauling cedar without a valid permit followed. The truck and contents were impounded and ultimately the present charge of theft in the second degree was filed.

In addition to the information obtained by questioning, Deputy Kilcup observed that the clothing of the defendants was sweaty and dirty and contained sawdust. The cedar blocks appeared to be freshly cut.

Camp Grisdale is in an area where there is a high incidence of cedar thievery. This fact was known to Deputy Kilcup. He stated, however, that at the time of the arrest, he did not know that U–Haul trucks had been involved in other cedar thefts. He conceded that at the time of the stop the only information he had received from the sheriff's office was that Special Deputy Byrd had suspicions about the vehicles. Beyond the description of the vehicles and their general location, no facts were given to Deputy Kilcup by anyone before the stop was made.

Deputy Kilcup testified that he did think that the action of the red car in slowing down was somewhat suspicious and appeared to him to be perhaps an effort to distract his attention from the truck. After the truck was stopped the red car disappeared by reversing its course and going up the road for some unknown distance. It did reappear before the wrecker came to tow away the impounded truck but Deputy Kilcup did not stop it. Instead, he requested other deputies in Montesano to look for the car. The car was

eventually found on the streets of Montesano but the driver was not apprehended.

On these facts, it is apparent that at the moment of the stop, probable cause did not exist for the arrest of the defendants. *State v. Gluck,* 83 Wn.2d 424, 426, 518 P.2d 703 (1974). The only basis for an arrest resulted from the answers to questions put to the defendants, coupled with the observations made possible because of the stop. The issue is whether or not under the circumstances, the police officer had a right to stop and detain the defendants for the purpose of interrogation.

The State urges that the officer's actions were reasonable in the light of all of the facts known to him. *Terry v. Ohio,* 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968); *Adams v. Williams,* 407 U.S. 143, 32 L. Ed. 2d 612, 92 S. Ct. 1921 (1972); *State v. Lesnick,* 84 Wn.2d 940, 530 P.2d 243 (1975); *State v. Sinclair,* 11 Wn. App. 523, 523 P.2d 1209 (1974).

In each case the court must balance the interest of society in enforcing the laws against the individual's right to protection against unreasonable searches and seizures. A determination of the reasonableness of an officer's intrusion depends to some degree on the seriousness of the apprehended criminal conduct. An officer may do far more if the suspected misconduct endangers life or personal safety than if it does not. Each case must be judged on its own facts. *State v. Lesnick, supra* at 941–42.

In *Terry v. Ohio, supra,* the officer had direct personal observations indicating a strong possibility of an impending crime of violence. In *Adams v. Williams, supra,* the officers had no personal knowledge but did have factual information from a reliable informant.

In *State v. Sinclair, supra,* the officers had stronger circumstances than in the case before us. Not only were they in a high–crime area, but they knew that a certain type of taxicab was being used to transport stolen goods; that color television sets were frequently the object of theft and the particular television set was plainly visible while it was

being carried in the rear compartment of the cab. The coincidence of these three factors justified the stop. In the present case, the only factor in common with *Sinclair* is the fact that the area had a high–crime incidence.

In *State v. Lesnick, supra,* the court held that an investigatory stop may be made even if the facts do not rise to the level of probable cause for arrest, if the arresting officer is acting on the factually adequate tip from a reliable informant. In *Lesnick,* it was evident that the tip was factually adequate but the divided court held that the anonymous and unidentifiable informant's reliability was not established. On that basis, the stop was held to be unreasonable under the circumstances and the evidence unconstitutionally seized.

■ Before us now is a variant of the *Lesnick* scenario. Special Deputy Byrd is presumed to be a reliable informant. *State v. Vanzant,* 14 Wn. App. 679, 544 P.2d 786 (1975); *United States v. Ventresca,* 380 U.S. 102, 13 L. Ed. 2d 684, 85 S. Ct. 741 (1965), but the information coming from the "reliable informant" was conclusory only, a mere suspicion that the truck was hauling cedar. A police officer's unfounded suspicion or hunch is not a legal basis for an intrusion into a person's privacy even for momentary interrogation. There must be some further factual basis. *State v. Davis,* 12 Wn. App. 32, 34–35, 527 P.2d 1131 (1974).

In *State v. Gluck, supra,* the officers had observed actions which would make a reasonable person suspicious. It is noteworthy that in *Gluck* the defendants were not arrested on the initial stop. They were in fact released and only arrested after confirmatory information had been secured.

Apart from the communicated suspicion of Special Deputy Byrd accompanying the description of the two vehicles, the only facts known to Deputy Kilcup were that the two vehicles he observed were moving together. The suggested decoying movement of the red car was not accepted by the trial judge as a reasonable basis for the stop of the truck. This determination was reached by the trial judge after

seeing and hearing the witness, and we are not disposed to reevaluate it. The trial judge concluded, and we agree, that without the information furnished by Special Deputy Byrd, there was no basis for the stop.

As observed in *Carroll v. United States,* 267 U.S. 132, 154, 69 L. Ed. 543, 45 S. Ct. 280, 39 A.L.R. 790 (1924),

> those lawfully within the country, entitled to use the public highways, have a right to free passage without interruption or search unless there is known to a competent official authorized to search, probable cause for believing that their vehicles are carrying contraband or illegal merchandise.

We, and no doubt the trial court, might reach a different conclusion if Special Deputy Byrd had been able to articulate some facts reasonably supporting his suspicion but he was not produced as a witness.

If we correctly understand the State's position, it is that once the reliability of the informant is established, the factual basis for his communication is not subject to further inquiry. We do not so understand the law. We recognize that there is a quantitative difference between sufficient evidence to constitute probable cause to arrest and the lesser quantity necessary to constitute probable cause to stop and interrogate, but in either case, upon challenge, the State has the burden of establishing the factual basis of its action. *See State v. Davis, supra.*

In *Whiteley v. Warden of Wyoming State Penitentiary,* 401 U.S. 560, 568, 28 L. Ed. 2d 306, 91 S. Ct. 1031 (1971), speaking to the matter of arrest, the court said:

> We do not, of course, question that the Laramie police were entitled to act on the strength of the radio bulletin. Certainly police officers called upon to aid other officers in executing arrest warrants are entitled to assume that the officers requesting aid offered the magistrate the information requisite to support an independent judicial assessment of probable cause. Where, however, the contrary turns out to be true, an otherwise illegal arrest cannot be insulated from challenge by the decision of the instigating officer to rely on fellow officers to make the arrest.

*See also United States v. Miles,* 468 F.2d 482, 486 (3d Cir. 1972); *United States v. Wixom,* 460 F.2d 206, 208 (8th Cir. 1972).

We think the same principle applies to the lesser intrusion of stopping a vehicle for interrogation. There must be some factual basis for the communication by the first officer to the second officer. The action of the second officer cannot be insulated from the failure of the first officer to have knowledge of facts merely because the first officer is presumed to be reliable.

There was no disclosed factual basis for the suspicions of the first officer in this case, and the trial judge properly concluded that standing alone the action of the red car did not give rise to independent reasonable grounds to stop and interrogate the truck's driver.

Because there was legally insufficient justification to stop the truck, the evidence obtained after that stop was properly suppressed.

The order of suppression is affirmed.

PEARSON, C.J., and PETRIE, J., concur.

Reconsideration denied March 1, 1978.

Review denied by Supreme Court July 21, 1978.