**UNITED STATES of America**

v.

**Anthony CUTCHIN, Appellant.**

**No. 91–3202.**

United States Court of Appeals,
District of Columbia Circuit.

Argued Jan. 27, 1992.

Decided Feb. 28, 1992.

Rehearing Denied April 27, 1992.

A.J. Kramer, Federal Public Defender, was on the brief, for appellant. Penny Marshall, Asst. Federal Public Defender, also entered an appearance for appellant.

Albert A. Herring, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty., John R. Fisher and Thomas C. Black, Asst. U.S. Attys., were on the brief, for appellee.

Before MIKVA, Chief Judge, RUTH BADER GINSBURG and RANDOLPH, Circuit Judges.

Opinion for the Court filed by Circuit Judge RANDOLPH.

RANDOLPH, Circuit Judge:

Within modern police departments, the officer who receives information justifying an individual's detention often is not the officer who acts on the information. Daily bulletins, computer messages and radio broadcasts alert officers in the field about those suspected of criminal activity. Anthony Cutchin, a previously convicted felon, was stopped on the basis of information so conveyed while he was driving with a sawed-off shotgun and a .38 caliber pistol at his side. In this appeal from his conviction after a jury trial of possession of a firearm by a felon, 18 U.S.C. § 922(g), and carrying a pistol without a license, D.C.Code Ann. § 22–3204(a), Cutchin objects to a ruling during the suppression hearing that, he says, prevented him from mounting a Fourth Amendment challenge to the events leading to the seizure of the weapons and his arrest.

The facts relating to this objection are as follows. About 1:00 a.m. on February 3, 1991, a police dispatcher, apparently acting on a tip from a 911 call, radioed Officer David Taylor to look for a brown car "with a loud muffler" that had been reported racing near Fourth and W Streets, N.W. In response, Officer Taylor stopped a brown car in the area but did not detain it. A short time later, the dispatcher radioed another message, this time regarding an old white station wagon with a dragging muffler making a loud noise that had been racing in the same vicinity. (The record does not reveal whether there was a 911 call about a white car.) Officer Taylor soon came upon a 1981 white station wagon driven by Cutchin. The car was not speeding, its muffler was not dragging and Officer Taylor did not hear any loud noises coming from it. Traffic was light. Seeing no other cars matching the dispatcher's description, Officer Taylor pulled Cutchin over and, after events described later in the opinion, arrested him and recovered the weapons.

■ At the suppression hearing Cutchin maintained that Officer Taylor's stopping of his car violated the Fourth Amendment. Investigatory stops of vehicles must be supported by "a particularized and objective basis for suspecting" criminal conduct. *United States v. Cortez,* 449 U.S. 411, 417, 101 S.Ct. 690, 695, 66 L.Ed.2d 621 (1981); *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). This can be supplied on the basis of a 911 call alone if it has sufficient indicia of reliability. *See Alabama v. White,* 496 U.S. 325, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990). If so, a dispatcher may alert other officers by radio, who may then rely on the report, *see Whiteley v. Warden,* 401 U.S. 560, 568, 91 S.Ct. 1031, 1037, 28 L.Ed.2d 306 (1971), even though they cannot vouch

for it. *United States v. Hensley,* 469 U.S. 221, 230–33, 105 S.Ct. 675, 681–83, 83 L.Ed.2d 604 (1985). Without such indicia of reliability the stop will be illegal unless the officers acting on the report have "sufficiently corroborated [the report] to furnish reasonable suspicion that [the subject] was engaged in criminal activity" or had been so engaged. *See White,* 110 S.Ct. at 2416; *Cortez,* 449 U.S. at 417 n. 2, 101 S.Ct. at 695 n. 2.

■ Cutchin did not challenge Officer Taylor's version of what the dispatcher said in the second broadcast. His theory was that the dispatcher had no basis for alerting Officer Taylor about a white station wagon because the only 911 calls the dispatcher received related to a brown car. In order to show this, defense counsel unsuccessfully sought to place in evidence a police tape recording containing both the dispatcher's broadcasts and the incoming 911 calls. Counsel first attempted to introduce the tape for this purpose during Officer Taylor's testimony. At that point, the district court properly excluded it. Officer Taylor could not verify the 911 calls and had no personal knowledge of them; as to his testimony the tape was irrelevant. After the government rested, counsel again moved to introduce the tape, this time describing the tape as containing two 911 calls, both about a brown car, which would prove that the dispatcher "changes the scenario" to a white car. When asked to respond to this proffer, the government offered the following explanation: "there are two 911 calls on the tape.... It's correct in both 911 calls that the caller mentions a brown car specifically drag racing up and down the street at Fourth and W. The first caller is a male. The second caller is female. There is also at the same time a call for drag racing several—about ten blocks away, at 3000 V Street. I don't know what the call was there. That call may have been for a white car." Whether the prosecutor accurately recounted the 911 calls on the tape is beside the point. Her remarks were not evidence. What the tape itself revealed went directly to the issue whether the dispatcher had reasonable, articulable suspicion, without which

Officer Taylor's stop of Cutchin's car might not have been legal. Indeed, we would have expected the government to support rather than resist putting the tape in evidence in order to satisfy *Hensley.* *See United States v. Longmire,* 761 F.2d 411, 417–18 (7th Cir.1985); *United States v. Robinson,* 536 F.2d 1298 (9th Cir.1976). That the tape was hearsay was not a sufficient grounds for excluding it in the suppression hearing. *See United States v. Matlock,* 415 U.S. 164, 175, 94 S.Ct. 988, 995, 39 L.Ed.2d 242 (1974). Therefore, we are compelled to remand for a new suppression hearing, so that the parties can present evidence, including the tape, pertaining to the dispatcher's justification for the radio broadcast.

Nonetheless, in the interests of efficiency, we will consider the other issues raised on appeal, which do not depend on what the tape may contain. *See, e.g., United States v. Bradshaw,* 935 F.2d 295 (D.C.Cir.1991). At Officer Taylor's signal, Cutchin pulled over, and Officer Taylor parked behind him. Both got out of their cars, and Cutchin walked "rapidly" toward Officer Taylor. As Cutchin approached, Officer Taylor put out his hand, touched Cutchin, and told him to return to his car. Cutchin complied. Officer Taylor asked for his driver's license and registration. Cutchin volunteered that he did not have a driver's license, and that the registration was in the car but the car did not have the proper tags. Officer Taylor, who then decided to arrest Cutchin for driving without a license, frisked him and found something that felt like bullets in his right front pocket. When asked, Cutchin admitted that they were indeed bullets. Seeing something through the car window that looked like a gun, Officer Taylor opened the passenger side door and discovered the sawed-off shotgun and .38 caliber pistol.

■ The frisk was constitutionally permissible. The district court found that Cutchin's rapid movement toward Officer Taylor, in the context of the situation, was sufficiently threatening to warrant a protective frisk. Cutchin argues against this, but there is no reason to pass on the mat-

ter. When Officer Taylor patted Cutchin down, Cutchin had already admitted committing several offenses, including driving without a license, a misdemeanor under D.C.Code Ann. § 23–581(a)(1)(B). At that point, Officer Taylor had probable cause to arrest Cutchin and to perform a search incident to arrest. *United States v. Robinson*, 414 U.S. 218, 233–34, 94 S.Ct. 467, 476, 38 L.Ed.2d 427 (1973); *United States v. Tavolacci*, 895 F.2d 1423, 1428 (D.C.Cir. 1990). Officer Taylor testified that at the time of the frisk he intended to arrest Cutchin for driving without a license. Cutchin was later charged with that offense, in addition to ones for which he was prosecuted, but the government chose not to pursue it. It is of no moment that Officer Taylor conducted the frisk before he formally placed Cutchin under arrest. The "sequence makes no difference since police did not need the fruits of the search to establish probable cause." *Tavolacci*, 895 F.2d at 1428; *United States v. $639,-558 in U.S. Currency*, 955 F.2d 712, 717 n. 8 (D.C.Cir.1992).

■ Cutchin also complains about his sentence. He thinks he was entitled to a two-point reduction for acceptance of responsibility. U.S.S.G. § 3E1.1. There is a difference in admitting the acts and accepting responsibility for the crimes. Cutchin continues to make excuses (he was merely returning the guns to his brother), and the district court was well within bounds in denying the reduction. *See United States v. McLean*, 951 F.2d 1300, 1303 n. 2 (D.C.Cir.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 1775, —— L.Ed.2d —— (1992); *United States v. Taylor*, 937 F.2d 676, 680 (D.C.Cir.1991).

■ The sentencing judge imposed a sentence of 27–39 months' imprisonment: 21 months under the Sentencing Guidelines for the federal offense, plus 6 to 18 months for the D.C.Code offense, to be served consecutively. Cutchin argues that we should exercise our superintending power over the district court to require it to apply the Guidelines to D.C.Code violations as if they were federal offenses. This would have resulted, according to his calculations, in concurrent sentences of 21 months. *See* U.S.S.G. §§ 2K2.1(a), 3D1.2(a), 5G1.2(c).

We decline Cutchin's invitation. It suffices to say, as Cutchin concedes, that the Sentencing Guidelines apply only to federal crimes under 18 U.S.C. § 3551(a). Defendants found guilty of violations of the D.C.Code can only be sentenced under the D.C.Code. Because the Guidelines are silent on the issue, how a court is to relate a Guidelines sentence to a non-Guidelines sentence is a matter of discretion. *Cf. United States v. Watford*, 894 F.2d 665, 669 (4th Cir.1990). Because we find that the court here did not abuse that discretion by imposing the sentences consecutively, we affirm the sentence.

■ Cutchin's remaining argument is that he should have received notice before the sentencing hearing that the district court might not grant the two-point reduction for acceptance of responsibility, which the presentence report had recommended. We rejected an identical claim in *McLean*, at 1302–03.

The case is remanded for further proceedings consistent with this opinion.

*So ordered.*