**STATE of Missouri, Appellant,**

v.

**Curtis FRANKLIN, Respondent.**

**No. 74851.**

Supreme Court of Missouri,
En Banc.

Oct. 27, 1992.

As Modified on Denial of Rehearing
Nov. 24, 1992.

Albert A. Riederer, Pros. Atty., Robert Frager, Asst. Pros. Atty., Jackson County, Kansas City, for appellant.

Kathleen Kopach Woods, Byron Neal Fox, Kansas City, for respondent.

COVINGTON, Judge.

The State appeals from the trial court's order sustaining Respondent Curtis Frank-lin's motion to suppress evidence in which respondent challenged the initial stop, the subsequent arrest, and the legality of the searches that resulted in prosecution of respondent for possession of illegal drugs. The trial court found that the investigating officer had no reason to stop respondent and subsequently to search him and the car he was driving. The court further found that the subsequent arrest of respondent for failing to display a driver's license was a pretext to justify a more complete search of respondent and an inventory search of respondent's vehicle. The state made interlocutory appeal pursuant to § 547.200, RSMo 1986. The Missouri Court of Appeals, Western District, affirmed, addressing only the question of the validity of the arrest. This Court granted transfer to consider the important question of the allegedly pretextual arrest. Upon review of the record this Court finds the investigatory stop to have been invalid and does not, therefore, reach the question of the validity of the arrest. Affirmed.

The record reflects that on October 3, 1989, at approximately 6:45 p.m., Officer Duncan of the Kansas City Police Department received a dispatch stating "party armed, occupying a black 1984 Pontiac Fiero in the area of 4200 East 60th Terrace."

Officer Duncan proceeded to the area, where he saw a black Pontiac Fiero being driven westbound on 61st Street. The officer turned around to follow the Fiero and turned on his red lights. Respondent turned into a gas station and stopped.

Officer Duncan approached the Fiero with his gun pulled and directed respondent to exit the vehicle. Officer Duncan took respondent to the side of the vehicle, handcuffed him, and patted him down to determine whether respondent had a weapon on his person. Finding no weapon, Officer Duncan felt under the seats of the vehicle and checked the console for a weapon. Again he found no weapon. Officer Duncan then asked respondent for his driver's license.

When respondent was not able to produce a driver's license, Officer Duncan placed respondent under custodial arrest

and searched him. Officer Duncan found a marijuana cigarette in respondent's pocket and, as a result, Officer Duncan placed respondent under arrest for possession of marijuana.

Officer Duncan conducted an inventory of respondent's vehicle and discovered two additional marijuana cigarettes and a brown grocery sack containing $37,843.99. Officer Duncan called a canine officer to search the car. The dog discovered another marijuana cigarette.

The trial court sustained respondent's motion to suppress the evidence seized from his person and from the vehicle. In the suppression order, the trial court found that Officer Duncan had no reason to believe that respondent was engaged in any type of criminal activity that would authorize an investigatory stop. The trial court further found the arrest for not bearing a driver's license to be pretextual.

On appeal the state contends that the initial stop was valid, that the arrest of respondent for not having a valid driver's license on his person was valid, and that the search pursuant to the arrest was permissible. Respondent contends that the trial court properly sustained respondent's motion to suppress because respondent and the vehicle were illegally searched. Respondent challenges the validity of the initial stop, the searches, and the arrest, which respondent claims was pretextual.

■ The reviewing court is to affirm the trial court's decision if the evidence is sufficient to sustain its finding. *State v. Burkhardt*, 795 S.W.2d 399, 404 (Mo. banc 1990). The facts and the reasonable inferences arising from the facts are to be stated favorably to the trial court's order with the reviewing court free to disregard contrary evidence and inferences. *State v. Stokes*, 710 S.W.2d 424, 426 (Mo.App.1986). Neither party disputes the facts of the present case. The correctness of the trial court's decision is, therefore, measured solely by whether the evidence is sufficient to sustain the findings.

The first issue is the question of whether the initial stop was permissible under the Fourth Amendment of the United States Constitution. Respondent contends that the stop was improper because Officer Duncan lacked the requisite reasonable suspicion to make an investigatory stop. Respondent's contention is correct and is dispositive.

■ The Fourth Amendment of the United States Constitution affords citizens constitutional protection from unreasonable searches and seizures. The Fourth Amendment is not offended when a law enforcement officer briefly stops a person if the officer has a reasonable suspicion, based upon specific and articulable facts, that the person was or is involved in criminal activity. *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *United States v. Hensley*, 469 U.S. 221, 229, 105 S.Ct. 675, 680, 83 L.Ed.2d 604 (1985). Nor is the Fourth Amendment offended when a law enforcement officer briefly stops a moving automobile to investigate, founded upon a reasonable suspicion that the occupants are involved in criminal activity, if the suspicion is supported by specific and articulable facts. *United States v. Brignoni–Ponce*, 422 U.S. 873, 882, 95 S.Ct. 2574, 2580, 45 L.Ed.2d 607 (1975).

Although a stop must be supported by reasonable suspicion, a detaining officer is not always required personally to observe the facts that lead to reasonable suspicion, just as an arresting officer is not always required personally to observe the facts that lead to probable cause for an arrest. *See United States v. De Leon–Reyna*, 898 F.2d 486, 489 (5th Cir.1990); *United States v. Webster*, 750 F.2d 307, 323 (5th Cir.1984), *cert. denied*, 471 U.S. 1106, 105 S.Ct. 2340, 85 L.Ed.2d 855 (1985). *See generally*, 2 Wayne R. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment* § 3.5(b) (2d ed. 1987).

■ An officer may receive information through another officer sufficient to authorize either an arrest or a stop. The appropriateness of an arrest made on the basis of information received through police channels was first addressed by the United States Supreme Court in *Whiteley v. Warden*, 401 U.S. 560, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1971). The Court held that an arresting officer is entitled to act on the strength of a radio bulletin. Where it is later deter-

mined, however, that the warrant underlying the bulletin was unsupported by probable cause, the arrest is not necessarily insulated from challenge simply because the instigating officer relied upon other officers to make the arrest. *Id.* at 568, 91 S.Ct. at 1037.

After *Whiteley* the question remained whether the *Whiteley* standard extended to situations in which an officer effects a *Terry* stop, rather than an arrest, on the basis of information received from another police officer or department. The United States Supreme Court in *United States v. Hensley*, 469 U.S. 221, 105 S.Ct. 675, 83 L.Ed.2d 604 (1985), confronted the question and extended *Whiteley* to *Terry* stops. *Hensley* examined the legality of a *Terry* stop to investigate a past crime. The *Hensley* Court made clear that evidence from a *Terry*-type stop is inadmissible if an officer makes the stop on the basis of information provided by another officer or police department if the requesting officer or department lacked reasonable suspicion to make the stop.[1] In *Hensley* a police officer

---

1. *See also United States v. Cutchin,* 956 F.2d 1216, 1217–18 (D.C.Cir.1992) (If the source of a dispatch is supported by reasonable suspicion a dispatcher may alert the other officer by radio, who may then rely on the report.); *United States v. Roach,* 958 F.2d 679, 683 (6th Cir.1992) ("We believe that Officer Tate, as the officer who issued the bulletin on Roach, meets the *Hensley* test.... Tate possessed reasonable suspicion that Roach had acted unlawfully and had a proper basis for issuing a bulletin to other officers to be on the lookout for Roach."); *United States v. Thompson,* 906 F.2d 1292, 1296 n. 7 (8th Cir.), *cert. denied,* — U.S. ——, 111 S.Ct. 530, 112 L.Ed.2d 540 (1990) ("Although the tip was received by KCMPD Detective Luther, Officer Schmidt was entitled to rely on the information transmitted over the all-points bulletin as long as the originator of the radio bulletin had reasonable suspicion to believe a crime would be or had been committed."); *United States v. Rodriguez,* 831 F.2d 162, 166 (7th Cir.1987), *cert. denied,* 485 U.S. 965, 108 S.Ct. 1234, 99 L.Ed.2d 433 (1988) ("[W]e think that ... the officer making the investigatory stop might reasonably rely on the request of another investigator. The requesting DEA agent had good grounds for articulable suspicion."); *United States v. Longmire,* 761 F.2d 411, 415–16 (7th Cir.1985) (Although the officer who acts in reliance on a bulletin or flyer need not have personal knowledge of the facts that created the reasonable suspicion, the officer who issues the radio bulletin or flyer must have a reasonable suspicion sufficient to justify a stop.); *United States v. Mobley,* 699 F.2d 172, 174 (4th Cir.), *cert. denied,* 461 U.S. 909, 103 S.Ct. 1884, 76 L.Ed.2d 813 (1983) ("Since the officers making the stop were acting upon orders from Lieutenant Yinger and the direction of agent Duffy ... we must decide whether Duffy's broadcast and Yinger's order to stop the white Lincoln meet the test of *Terry v. Ohio.*"); *United States v. Robinson,* 536 F.2d 1298, 1300 (9th Cir.1976) ("If the dispatcher himself had had founded suspicion, or if he had relied on information from a reliable informant who supplied him with adequate facts to establish founded suspicion, the dispatcher could properly have delegated the stopping function to Officer Holland. But if the dispatcher did not have such cause, he could not create justification simply by relaying a direction to a fellow officer."); *Kaiser v. State,* 296 Ark. 125, 752 S.W.2d 271, 274 (1988) ("The Supreme Court's opinion makes it clear that the failure of the issuing police agency to have reasonable suspicion to stop and search a vehicle cannot be immunized from a Fourth Amendment objection by passing the information on to another police officer or department which then acts upon it."); *Village of Gurnee v. Gross,* 174 Ill. App.3d 66, 123 Ill.Dec. 866, 868, 528 N.E.2d 411, 413 (1988) ("While a police officer may rely on information received through police communication channels, including radio messages, to justify an investigatory stop, the collective knowledge of the law enforcement agency requesting or directing such action must be viewed to determine whether sufficient facts existed warranting a stop."); *State v. Bailey,* 452 N.W.2d 181, 183 (Iowa 1990) ("Where the issue is the validity of an investigatory stop, a reasonably founded suspicion may not be established solely by evidence of the receipt by the stopping officer of a radio dispatch. Proof of the factual foundation for the relayed message is also required."); *Commonwealth v. Fraser,* 410 Mass. 541, 573 N.E.2d 979, 982 (1991) ("[T]he record is barren of evidence indicating that the officer responsible for issuing the radio call had sufficient information to justify a *Terry*-type frisk.... Therefore, we are constrained by *Hensley* to conclude that the radio broadcast did not, in and of itself, give Officer Columbo the reasonable suspicion required to conduct a protective frisk."); *Olson v. Commissioner of Public Safety,* 371 N.W.2d 552, 555–56 (Minn.1985) ("Whether ... the evidence uncovered in the course of the stop is admissible depends on whether the dispatcher, who issued the message to the deputies, was in possession of specific and articulable facts supporting reasonable suspicion that there was a drunk driver on the road."); *State v. Holmes,* 28 Ohio App.3d 12, 501 N.E.2d 629, 634–35 (1985) ("It is now settled that the absence of complete knowledge on the part of those who act in objective reliance upon a broadcast, flyer or bulletin will not serve as a constitutional impediment as long as the officer issuing the information has the requisite knowledge to establish the justification for the arrest or detention."); *State v. Black,* 80 Or.App. 12,

stopped the defendant in reliance upon a flyer issued by another police department indicating the defendant was wanted for questioning. *Id.* at 229, 105 S.Ct. at 680. The Court recognized that effective law enforcement is dependent upon police officers acting at the request of other officers or police departments and detaining officers cannot be expected to cross-examine their fellow officers about the foundation for transmitted information. *Id.* at 231, 105 S.Ct. at 681. The Court held, however, that if an officer makes a stop in objective reliance on information provided by another officer or law enforcement office, the evidence uncovered as a result of the stop is inadmissible if the police who *issued* the bulletin lacked reasonable suspicion to make the stop or if the stop was significantly more intrusive than would have been permitted by the issuing department.[2] *Id.* at 232, 105 S.Ct. at 682.[3]

■ In the present case it is clear that if Officer Duncan had made a stop in objective reliance on information provided by a written bulletin, *Hensley* would control. The inquiry, then, is whether *Hensley* controls a stop made in reliance on a police radio dispatch, as well as a stop made in reliance on a police flyer. This Court finds no rational distinction between a stop made in reliance on a flyer and a stop made in reliance on a police radio dispatch, and no other court has made such distinction.[4] The logical application of *Hensley*, in fact, requires a finding that a police radio dispatch must be based upon reasonable suspicion if a stop initiated in reliance upon the dispatch is to be justified under the Fourth Amendment.

■ It remains to apply *Hensley* to this case. *Hensley* requires a determination of the following: (1) did the dispatch objectively support the action taken by Of-

721 P.2d 842, 846 (1986) ("It cannot be successfully argued that the trooper in this case could have reasonably suspected that defendant had committed a crime merely because he could have assumed that the dispatcher's information was based upon a reliable source. The appropriate inquiry is whether the information possessed collectively by the trooper and the dispatcher gave rise to a reasonable suspicion that defendant had committed a crime."); *State v. Moore*, 775 S.W.2d 372, 378 (Tenn.Crim.App. 1989) ("[T]he prosecution has the burden of establishing by a preponderance of the evidence that the police officer or agency responsible for the broadcast, bulletin or flyer had a reasonable suspicion, supported by specific facts, that a criminal offense had been, or was about to be, committed before the acts of the officer relying upon the information can be said to be legal."); *State v. Bruce*, 779 P.2d 646, 650–651 (Utah 1989) ("Assuming the police make a *Terry* stop in objective reliance on a flyer or bulletin, we hold that the evidence uncovered in the course of the stop is admissible if the police who *issued* the flyer or bulletin possessed a reasonable suspicion justifying a stop."); *State v. McCord*, 19 Wash.App. 250, 576 P.2d 892, 896 (1978) ("The action of the second officer cannot be insulated from the failure of the first officer to have knowledge of facts merely because the first officer is presumed to be reliable".)

2. The dissent applies *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), to this case. As the dissent concedes, however, *Leon* involves a determination of probable cause by a magistrate whose neutrality need not be subject to the protections afforded by the

Fourth Amendment. Penalizing an officer for the magistrate's error could not logically contribute to the deterrence of Fourth Amendment violations. *Id.* at 921, 104 S.Ct. at 3419. *See also Massachusetts v. Sheppard*, 468 U.S. 981, 104 S.Ct. 3424, 82 L.Ed.2d 737 (1984).

3. An officer who conducts a stop in objective reliance on a flyer or bulletin is nevertheless protected by a good faith defense to any civil suit. *Id.*

4. For courts that have applied the *Hensley* holding to radio dispatches see: *United States v. Cutchin*, 956 F.2d 1216, 1217–18 (D.C.Cir.1992); *United States v. Roach*, 958 F.2d 679, 683 (6th Cir.1992); *United States v. Thompson*, 906 F.2d 1292, 1296 n. 7 (8th Cir.), *cert. denied*, —— U.S. ——, 111 S.Ct. 530, 112 L.Ed.2d 540 (1990); *United States v. Longmire*, 761 F.2d 411, 415–16 (7th Cir.1985); *United States v. Mobley*, 699 F.2d 172 (4th Cir.), *cert. denied*, 461 U.S. 909, 103 S.Ct. 1884, 76 L.Ed.2d 813 (1983); *United States v. Robinson*, 536 F.2d 1298 (9th Cir.1976); *Village of Gurnee v. Gross*, 174 Ill.App.3d 66, 123 Ill.Dec. 866, 868, 528 N.E.2d 411, 413 (1988); *State v. Bailey*, 452 N.W.2d 181, 183 (Iowa 1990); *Commonwealth v. Fraser*, 410 Mass. 541, 573 N.E.2d 979, 982 (1991); *Olson v. Commissioner of Public Safety*, 371 N.W.2d 552, 555–56 (Minn.1985); *State v. Holmes*, 28 Ohio App.3d 12, 501 N.E.2d 629, 634–35 (1985); *State v. Black*, 80 Or.App. 12, 721 P.2d 842, 846 (1986); *State v. Moore*, 775 S.W.2d 372, 377–78 (Tenn. Crim.App.1989); *State v. Bruce*, 779 P.2d 646, 650–651 (Utah 1989); *State v. McCord*, 19 Wash. App. 250, 576 P.2d 892, 896 (1978).

ficer Duncan; (2) was the dispatch issued on the basis of a reasonable suspicion that the occupant of the Fiero had been involved in a crime; and (3) was the stop that in fact occurred any more intrusive than would have been permitted the dispatcher. *Hensley*, at 232, 105 S.Ct. at 682. In applying *Hensley* to the present case it is necessary to address only the second question, since a stop in objective reliance on a dispatch that has been issued in the absence of reasonable suspicion violates the Fourth Amendment.

In addressing the second *Hensley* requirement, it becomes clear that the state failed to meet its burden. At a suppression hearing the state bears both the burden of producing evidence and the risk of nonpersuasion to show by a preponderance of the evidence that the motion to suppress should be overruled. § 542.296.6, RSMo 1986; *State v. Milliorn*, 794 S.W.2d 181, 184 (Mo. banc 1990). The record contains no evidence of a dispatch issued on the basis of reasonable suspicion, and the detaining officer did not personally observe, independent of the dispatch, any behavior that would justify the stop. The dispatcher was not called to testify at the suppression hearing. The record is silent as to the source of the information that lead to the police dispatch.[5] Without that information, the court cannot determine whether the dispatch was based upon reasonable suspicion.[6]

The state argues that Missouri courts have upheld the constitutionality of investigatory stops made on factual justification less than that found in the present case. Reasonable suspicion is dependent upon the totality of circumstances. *United States v. Cortez*, 449 U.S. 411, 417, 101 S.Ct. 690, 694, 66 L.Ed.2d 621 (1981). In the cases upon which the state relies, the totality of

circumstances differed from the present case. In *State v. Nelson*, 777 S.W.2d 333 (Mo.App.1989), a police officer observed defendant sitting in his car across the street from a convenience store at 2:00 a.m. the night after the store had been robbed. *Id.* at 335. The defendant matched the description of the robber given by the store clerk on duty during the robbery and the picture taken by a surveillance camera during the robbery. *Id.* The totality of circumstances justified the stop. First, the defendant matched the description of the robber. Second, the officer personally observed suspicious behavior—a man was sitting across the street from the convenience store at 2:00 a.m. and the man drove away with excess caution after the police officer drove by the car. Third, and the most important of the circumstances, the description of the robber was based upon information obtained from the victim and a photograph taken during the robbery. The circumstances in *Nelson* authorized a finding that the description of the robber was based upon reasonable suspicion.

The state's use of *State v. Hunter*, 783 S.W.2d 493 (Mo.App.1990), is also misplaced. In *Hunter*, the police officer was on patrol looking for a suspect who was threatening suicide and possibly had a gun. *Id.* at 494. The officer drove up and stopped behind what he thought was an unoccupied vehicle to determine if the suicide subject might be in the vehicle. *Id.* When he shone his "take-down" lights at the vehicle, he observed the driver lunging toward the passenger, then the passenger ducking out of view in an apparent attempt to hide something under the seat. *Id.* In *Hunter* the conduct the officer personally observed after he shone a light at the car, not the report of the apparent suicide, pro-

---

5. Officer Duncan testified at the suppression hearing that it was ultimately determined that the "call seemed to be unfounded."

6. If a dispatch is based upon information provided by another police officer, the court looks to whether the collective information known to all officers involved in the stop amounted to reasonable suspicion. *United States v. De Leon-Reyna*, 898 F.2d 486, 489 (5th Cir.1990). If the dispatch is based upon information obtained

from an identified informant, courts examine whether the informant was known to the police to be reliable. *Adams v. Williams*, 407 U.S. 143, 146, 92 S.Ct. 1921, 1923, 32 L.Ed.2d 612 (1972). If the information was obtained from an anonymous informant, the question is whether the police corroborated the details of the tip before making the stop. *Alabama v. White*, 496 U.S. 325, 325–27, 110 S.Ct. 2412, 2414, 110 L.Ed.2d 301 (1990).

vided the basis for reasonable suspicion. *Id.* at 495.

*State v. Fernandez,* 691 S.W.2d 267 (Mo. banc 1985), is likewise distinguishable from the present case. In *Fernandez* two police officers stopped defendant based on a radio dispatch. The fact that the dispatch was based upon an anonymous informant's call was a matter of record.[7] *Id.* at 268.

The state further cites *Adams v. Williams,* 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972), in support of its argument, also easily distinguishable. In *Adams* a police officer stopped the defendant because a known and reliable informant approached the officer and informed him that defendant was seated in a nearby vehicle with narcotics and a gun in his possession. *Id.* at 144–45, 92 S.Ct. at 1922. Unlike the present case, the government in *Adams* presented evidence as to the source of the information that led the officer to make the stop. The court was able to assess the reliability of the information in determining whether the police were justified in making the stop. *Id.* at 146–47, 92 S.Ct. at 1923. The state's cases do not support its position.

The record supports the trial court's finding that the investigatory stop was invalid. The record is devoid of evidence that the radio dispatch was issued on the basis of reasonable suspicion or that the detaining officer, absent the radio dispatch, independently observed behavior to justify the stop. Since the state presented no evidence at the suppression hearing to show the initial dispatch was supported by reasonable suspicion, and the detaining officer independent of the dispatch did not personally observe conduct to justify the stop, all evidence obtained as a result of the stop is inadmissible. *See Milliorn,* 794 S.W.2d at 187.

The decision of the trial court is affirmed. Cause remanded for further proceedings or orders not inconsistent with this opinion.

7. The *Fernandez* court did not require proof of the reliability of the anonymous tip; rather, it found citizen informants reliable as a matter of law. *Id.* at 269 n. 2. Since *Fernandez,* the United States Supreme Court has made clear in *Alabama v. White,* 496 U.S. 325, 110 S.Ct. 2412,

BENTON, THOMAS and LIMBAUGH, JJ., concur.

ROBERTSON, C.J., dissents in separate opinion filed.

HOLSTEIN, J., concurs in opinion of ROBERTSON, C.J.

PRICE, J., not sitting.

ROBERTSON, Chief Justice, dissenting.

The Fourth Amendment to the United States Constitution provides in pertinent part: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." These words have defied every judicial attempt to give them a firm, lasting definition around which law enforcement personnel, judicial officers and citizens can plan and judge their conduct.

This case involves a relatively simple factual scenario. A police officer patrolling in his police car receives information over his police radio. That information specifically describes an automobile, a location and a time, and informs the officer that the party driving the vehicle is armed. Within minutes of the broadcast of this information, near the location described, an officer spots a car matching the description of the vehicle described in the police radio broadcast. Weighing the information received over his police radio against what he sees in front of him, the officer decides to stop the car to investigate further. That stop, and the driver's failure to produce a driver's license when requested to do so, results in a search that reveals narcotics and a bag containing thousands of dollars in cash. On the strength of *United States v. Hensley,* 469 U.S. 221, 105 S.Ct. 675, 83 L.Ed.2d 604 (1985), the majority reasons that the state failed to show that the police dispatcher had a reasonable basis for announcing the information over the radio in the first place and, because of that, con-

110 L.Ed.2d 301 (1990), that not all anonymous tips are reliable. Courts must consider the facts known to the officer from personal observation to determine whether the stop was justified by reasonable suspicion. *Id.,* 496 U.S. at 329–31, 110 S.Ct. at 2416.

cludes that the state is prohibited from introducing any of the evidence discovered by the officer. For the reasons that follow, I respectfully dissent.

### I.

One is tempted to distinguish *Hensley* from this case factually and thus render *Hensley* inapposite. At least two factual distinctions present themselves. First, Justice O'Connor's opinion for the Court places unusual and curious reliance on the fact that communication resulting in Mr. Hensley's arrest came from another police department. Indeed, the Court defines the issue in *Hensley* saying, "At issue in this case is a stop of a person by officers of *one department* in reliance on a flyer issued by *another department* indicating that a person is wanted for investigation." [Emphasis added.] 469 U.S. at 229, 105 S.Ct. at 681. *Whiteley v. Warden*, 401 U.S. 560, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1971), and *United States v. Robinson*, 536 F.2d 1298 (9th Cir.1976) (the latter of which *Hensley* expressly cites as dealing with the precise issue), both have the same inter-departmental facts. However, I doubt the constitutional significance of this distinction; if there is one, I cannot make it stick.

Second, there is a request-to-act/information-only dichotomy in the cases. Thus, *Hensley* may turn on an agency theory: where the principal (requesting police department or dispatcher) asks another to perform an act (e.g., an arrest), the agent (the arresting officer) has only the authority of the principal and no more. The inquiry *Hensley* invites into the principal's basis for requesting the act is consistent with this theory. Where the dispatcher only provides information, but makes no request for action, as in this case, *Hensley* may not apply. Under this analysis, where the arresting officer makes a decision to stop on his or her own, based on the action-neutral information received via usually reliable police channels, the only rational focus is on the reasonableness of that officer's decision.

This second level of analysis could form the basis for my dissent. However, I do not need to do so. In my view, the majority's decision is incorrect because excluding the evidence in this case will serve no constitutionally useful purpose. I would extend the holding of *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), to the facts of this case and allow the state to introduce the evidence the majority suppresses.

To rest on *Leon* is to admit, at least for the sake of argument, that the dispatcher did not have a reasonable and independent basis for suspecting that the occupant of the 1984 black Fiero was armed and that the information on which Officer Duncan relied was not proven to be sufficient. Even assuming these two conclusions are true, however, it does not follow that the evidence uncovered in the search must be suppressed.

The Fourth Amendment does not require that evidence uncovered in a constitutionally-infirm search be excluded from the state's arsenal. Instead, the exclusionary rule is a product of the judicial imagination, designed to deter official misconduct. *Leon*, 468 U.S. at 906, 104 S.Ct. at 3411. "The deterrent purpose of the exclusionary rule necessarily assumes that the police have engaged in willful, or at the very least negligent, conduct which has deprived the defendant of some right." *United States v. Peltier*, 422 U.S. 531, 539, 95 S.Ct. 2313, 2318, 45 L.Ed.2d 374 (1975). With *Leon*, the Court announced a policy of "considering whether Fourth Amendment interests will be advanced" by the decision to exclude evidence. *Id.*, 468 U.S. at 915–6, 104 S.Ct. at 3417. Applying this policy, the Court held that it would not exclude evidence obtained "in objectively reasonable reliance on a subsequently invalidated search warrant." *Id.*, 468 U.S. at 922, 104 S.Ct. at 3420.

Admittedly, *Leon* involves a determination of probable cause by a neutral magistrate upon which an officer relies in good faith. One could argue that the absence of such a neutral officer terminates any application of *Leon* to stops initiated in reliance on subsequently invalidated information that led an officer on patrol to conduct a stop under the reasonable suspicion standard of *Terry v. Ohio*, 391 U.S. 1, 88 S.Ct.

1503, 20 L.Ed.2d 381 (1968). I note that the Supreme Court rejected a similar distinction in *Hensley,* finding the interests of law enforcement outweigh the privacy interest no less heavily when a *Terry* stop is involved than when a warrant is being executed. Certainly, the purposes of the exclusionary rule are no better served by excluding evidence obtained under a good faith *Terry* stop than they are by excluding evidence obtained in good faith reliance on a warrant. As the latter practice was abandoned by the Supreme Court in *Leon,* so should this Court abandon the former in this case.

> [E]xcluding the evidence will not further the ends of the exclusionary rule in any appreciable way; for it is painfully apparent that ... the officer is acting as a reasonable officer would and should act in similar circumstances. Excluding the evidence can in no way affect his future conduct unless it is to make him less willing to do his duty.

*Leon,* 468 U.S. at 920, 104 S.Ct. at 3419, quoting with approval *Stone v. Powell,* 428 U.S. 465, 539–540, 96 S.Ct. 3037, 3073, 49 L.Ed.2d 1067 (1976) (White, J., dissenting).

*Hensley* proves the point. That case serves as a prosecutorial sword; it encourages police officers to act on information received via the radio, while acknowledging that a Fourth Amendment violation may occur if the dispatch is subsequently found wanting. Indeed, *Hensley* encourages the stop where the officer on patrol objectively and in good faith believes that the information he or she receives is a valid basis for reasonable suspicion. *Hensley* did not address whether the exclusionary rule would apply in such a situation; it did not have to. The majority's application of the exclusionary rule defeats this policy of encouraging good faith reliance by punishing the state with a hindsight standard.

In this case, Officer Duncan responded to radio information describing a threat to public safety. That information was specific as to the description of the car, its location, and the time. Duncan did not interrogate the dispatcher, nor should he be expected to; the police radio is a normally reliable source of information concerning all manner of crimes and threats to public safety. As would any reasonable officer, Duncan formed a reasonable suspicion in good faith reliance on the dispatch that the 1984 black Fiero presented a present and serious threat to the public safety.

Applying *Leon,* I would suppress any evidence obtained where the dispatch could not support objectively reasonable reliance or where the dispatch merely relayed information that other officers knew or should have known was false. *Id.,* 468 U.S. at 923, 104 S.Ct. at 3420. Under my theory, the state still bears the burden of showing the good faith of the officer on patrol. However, where the defendant can show that the dispatcher made a false statement to the officer on patrol or made a statement that the dispatcher would have known was false except for his or her reckless disregard for the truth, the evidence will be suppressed.

II.

Even if one cannot agree with my extension of *Leon,* I believe the state can cure any *Hensley* defect in the evidence on remand. *Leon* speaks (without comment) of a motion for reconsideration as an option to the prosecution following an adverse ruling on a motion to suppress. 468 U.S. at 903–904, 104 S.Ct. at 3410. I believe that this procedure is both correct and appropriate in this case. All trials, particularly criminal trials, ought to permit the trier of fact the opportunity to hear and see high quality, inherently trustworthy evidence; defendants ought not to enjoy the benefit of a failure of proof by the state that can be corrected prior to trial and prior to the attachment of jeopardy.

For the reasons expressed, I respectfully dissent.