

# In the Missouri Court of Appeals
# Eastern District
## DIVISION ONE

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | No. ED112266 |
| | ) | |
| Plaintiff/Respondent, | ) | Appeal from the Circuit Court |
| | ) | of Cape Girardeau County |
| vs. | ) | No. 22CG-CR01146-01 |
| | ) | |
| ISAIAH M. LANE, | ) | Honorable Scott A. Lipke |
| | ) | |
| Defendant/Appellant. | ) | Filed: November 19, 2024 |

Defendant, Isaiah M. Lane, appeals the judgment and sentence entered by the Circuit Court of Cape Girardeau County following his conviction by a jury of one count of delivery of a controlled substance, in violation of section 579.020 RSMo. (2016). The trial court sentenced Defendant to a term of 15 years of imprisonment. Defendant challenges the police officer's stop and search of his vehicle that led to the charge of delivery of a controlled substance. We find the officer had reasonable suspicion to stop Defendant and investigate his involvement in a reported shooting. Further, the officer's discovery of methamphetamine and scales resulted from a proper search of Defendant's vehicle.

## Factual and Procedural Background

Defendant does not challenge the sufficiency of the evidence to support his conviction. Three witnesses testified at trial: the responding police officer who conducted the vehicle stop and search, the police officer who arrested and interviewed Defendant, and a technician from the

Missouri State Highway Patrol Crime Lab. Viewed in the light most favorable to the verdict, the following evidence was adduced at trial. *State v. Garner*, 670 S.W.3d 262, 264 (Mo. App. E.D. 2023).

On July 26, 2022, a Cape Girardeau officer heard a dispatch reporting "shots fired" at Hanover and William Streets and identifying the suspect vehicle as a black Tahoe. The officer responded immediately, and on his way to the scene, he observed a black Tahoe near the area where the shots were reported. The officer stopped the vehicle, which was driven by Defendant. In the interim, the officer received information from other officers at the scene confirming shots were fired into occupied houses. Given the nature of the dispatch, the officer drew his weapon, and directed Defendant to remain in the vehicle. The officer requested assistance. Once back-up arrived, the officer directed Defendant to exit the vehicle, and handcuffed him. Defendant stated "it wasn't him" although he saw who committed the shooting and he would try to help police.

The officer informed Defendant he would search the vehicle "because of the circumstances," those circumstances being that someone fired shots into occupied houses. The officer asked Defendant whether there were "guns or anything" in the vehicle, and Defendant replied he had drugs. The officer found scales in the driver's side door and, located directly behind the driver's seat and within Defendant's reach, a plastic bag containing "large rocks" of a crystal substance. Field testing indicated the crystal substance contained methamphetamine, and the quantity suggested to the officer that the drugs were intended for distribution. Testing at the Missouri State Highway Patrol Crime Lab confirmed the crystal substance was methamphetamine, and weighed a total of 28.04 grams.

Defendant told the officer he wanted to cooperate, and the officer instructed Defendant to speak with a detective at the police station. The officer released Defendant because Defendant

had no weapons in his possession and the officer was needed with the ongoing emergency involving the shots fired. The Defendant, however, did not contact a detective, so the officer obtained a warrant for Defendant's arrest some two weeks later. A second officer arrested Defendant and interviewed him after Defendant waived his *Miranda* rights.[1] Defendant told the second officer that he had just obtained the methamphetamine, and had been trying all night to sell it.

The State charged Defendant with one count of delivery of a controlled substance. The parties stipulated that Defendant was a prior and persistent felony offender. A jury found Defendant guilty, and the trial court sentenced him to 15 years of imprisonment. Defendant appeals.

Discussion

On appeal, Defendant claims the trial court erred for failing to exclude, *sua sponte*, evidence seized from the vehicle Defendant was driving because the evidence was obtained in violation of his right to be free from unreasonable search and seizure as guaranteed by the Fourth Amendment to the United States Constitution. Defendant contends there was no showing the police dispatch of "shots fired" and the general description of a "black Tahoe" were issued on the basis of reasonable suspicion or that the detaining officer independently observed any behavior of Defendant sufficient to justify a stop.

*Standard of Review*

"The Fourth Amendment of the U.S. Constitution preserves the right of the people to be secure from unreasonable searches and seizures." *State v. Lindsay*, 599 S.W.3d 532, 536 (Mo. App. E.D. 2020). To preserve a constitutional claim for review, a Defendant must raise the claim

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

3

at the first opportunity and with citation to specific constitutional objections. *Petersen v. State*, 658 S.W.3d 512, 515-16 (Mo. banc 2022); *see also State v. Goff*, 129 S.W.3d 857, 862 (Mo. banc 2004) (claim of illegal stop must be raised at earliest opportunity). Constitutional claims are waived if they are not presented to the trial court at the first opportunity. *Garris v. State*, 389 S.W.3d 648, 651 (Mo. banc 2012).

Typically, a defendant will file a motion to suppress evidence that the defendant believes was obtained in violation of Fourth Amendment protections. The State then has the opportunity to develop the record for the trial court's consideration. The State bears the burden of going forward with the evidence and the risk of non-persuasion to show, by a preponderance of the evidence, that the court should overrule the motion to suppress. *State v. Monath*, 42 S.W.3d 644, 648 (Mo. App. W.D. 2001). This allows the trial court an opportunity to rule on the motion.

Here, the defense did not file a motion to suppress the evidence seized from Defendant's vehicle. The defense also did not object at trial to admission of the evidence, and did not include the claim in the motion for new trial. Defendant now contends the trial court should have acted *sua sponte* to exclude the seized evidence. For the first time on appeal, Defendant raises his claim that the methamphetamine seized from his vehicle was obtained in violation of his right to be free from unreasonable search and seizure guaranteed by the Fourth Amendment. "Points raised on appeal that were not raised at trial or in a motion for new trial are not preserved for appeal." *State v. Edmond*, 675 S.W.3d 235, 243 (Mo. App. E.D. 2023).

Conceding this claim of error is not preserved for appellate review, Defendant asks this Court to use its discretion and review his claim under the plain-error standard. Rule 30.20. This Court can review claims of error that are not properly preserved only for plain error. *Id*. "[P]lain errors affecting substantial rights may be considered in the discretion of the court when the court

finds that manifest injustice or miscarriage of justice has resulted therefrom." *Id*. We exercise our discretion to review for plain error only when the defendant establishes facially substantial grounds to believe the trial court committed evident, obvious, and clear error that resulted in manifest injustice or a miscarriage of justice. *State v. Boston*, 530 S.W.3d 588, 590 (Mo. App. E.D. 2017). We should not proceed further with plain-error review in the absence of evident, obvious, and clear error. *Edmond*, 675 S.W.3d at 244. Defendant bears the burden of demonstrating that a manifest injustice occurred. *Petersen*, 658 S.W.3d at 517. Nevertheless, whether the Fourth Amendment was violated is a question of law that we review *de novo*. *Lindsay*, 599 S.W.3d at 536.

*Reasonable Suspicion for Brief Investigatory Stop of Defendant's Vehicle*

Defendant argues the record lacks any evidence demonstrating that the dispatch of "shots fired" was based on reasonable suspicion at the time it was issued. He also maintains there is nothing in the record indicating the officer personally observed Defendant exhibiting any suspicious behavior prior to his detention. Defendant maintains that the record does not support his detention or the seizure of any evidence from the vehicle he was driving. We disagree.

The Fourth Amendment allows police officers to make a brief, investigatory stop when the officer "observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot ...." *State v. Morgan*, 366 S.W.3d 565, 584-85 (Mo. App. E.D. 2012) (quoting *Terry v. Ohio,* 392 U.S. 1, 30 (1968)). Commonly referred to as a "*Terry* stop," such a stop applies to both individuals and motor vehicles. *Id*. at 585. To conduct a *Terry* stop, a police officer must have reasonable suspicion, supported by articulable facts, that the person stopped is engaged in criminal activity. *State v. Ybarra*, 637 S.W.3d 644, 655-56 (Mo. App. E.D. 2021). We determine the existence of reasonable suspicion objectively. *Lindsay*, 599

5

S.W.3d at 536. The question is whether the facts available to the officer at the time of the stop would lead a person of reasonable caution to believe the action taken was appropriate. *Id.*

Reasonable suspicion is a less demanding standard than probable cause. *Id*. Reasonable suspicion may be established with information different in amount or content or less reliable than the evidence required to establish probable cause. *Id.* We consider the quantity and quality of the information in the context of the totality of the circumstances. *Id.* A suspicion is reasonable when the officer can point to specific and articulable facts that, taken together with rational inferences drawn from those facts, reasonably warrant the investigatory stop. *Id*. In addition, while the officer who stops a defendant must have a reasonable suspicion for the detention, this does not require that the officer personally observe all of the facts leading to the reasonable suspicion. *Monath*, 42 S.W.3d at 649.

Here, the officer responded to a dispatch reporting that shots were fired at Hanover and William Streets and identifying the suspect vehicle as a black Tahoe. While responding to the scene, the officer observed a black Tahoe, matching the description of the suspect vehicle, near the area where the shots were fired. The officer stopped the vehicle, which was driven by Defendant. Other officers proceeded to the location where the "shots fired" were reported. In the interim, the officer received information from the other officers, at the scene, confirming shots were fired into occupied houses. Given the nature of the dispatch and the information relayed, the officer drew his weapon, and directed Defendant to remain in the vehicle. Once back-up arrived, the officer directed Defendant to exit the vehicle, and handcuffed him. Defendant stated "it wasn't him" although he saw who committed the shooting and he would try to help police. We find the officer had reasonable suspicion to stop Defendant for further investigation of the shots fired in the area as reported in the initial dispatch and confirmed by responding officers at

6

the scene. The facts available to the officer at the time of the stop would lead him to conclude in light of his experience that criminal activity was afoot and would lead a person of reasonable caution to believe the action taken was appropriate.

Defendant cites *State v. Franklin* for the proposition that, in the context of a police dispatch, the record must contain evidence the dispatch was based on reasonable suspicion to justify a *Terry* detention. 841 S.W.2d 639, 643 (Mo. banc 1992). In *Franklin*, a police officer received a dispatch stating "party armed, occupying a black 1984 Pontiac Fiero in the area of 4200 East 60th Terrace." *Id*. at 640. The officer saw a black Fiero driving in the area, pulled over the vehicle, patted down the driver, and checked for a weapon under the seats and in the console of the vehicle. *Id*. Finding no weapon, the officer then asked for the driver's license. *Id*. When the driver could not produce a driver's license, the officer arrested him, searched his person, conducted an inventory search of the vehicle, and called a dog to further search the vehicle. *Id*. at 640-41. The searches of the driver and the vehicle revealed marijuana cigarettes and money. *Id*. at 641. The defendant filed a motion to suppress the evidence, and the trial court held a suppression hearing. *Id*.

Our Supreme Court found that the State presented no evidence at the suppression hearing to show the initial dispatch was supported by reasonable suspicion of criminal activity nor did the detaining officer, apart from the dispatch, personally observe any conduct to justify the stop. *Id*. at 645. As a result, our Supreme Court could not determine from the record whether the dispatch was based on reasonable suspicion, and all evidence obtained as a result of the stop was determined to be inadmissible. *Id*. at 644-45. *Franklin* is distinguishable factually and procedurally.

Factually, *Franklin* involved a report originating from an unknown source simply indicating there was an armed party present in a certain area. The Supreme Court found the record was silent as to evidence supporting reasonable suspicion. *Id*. at 645. In contrast, the record here shows the officer responded to an initial dispatch concerning specific criminal activity, i.e. "shots fired" at Hanover and William Streets by a suspect in a black Tahoe. Defendant was seen driving a vehicle matching the suspect vehicle description in the area of the shots fired. The officer also received information from other police officers, at the scene, confirming shots were fired into occupied houses. Given the facts and totality of the circumstances, only then did the officer stop Defendant and tell Defendant he would search the vehicle "because of the circumstances," those circumstances being that someone in a black Tahoe fired shots into occupied houses. The officer asked Defendant whether there were "guns or anything" in the vehicle, and Defendant admitted that he had drugs. The officer had reasonable suspicion of criminal activity for the detention, and was not required to personally observe all the facts leading to the reasonable suspicion. *Monath*, 42 S.W.3d at 649.

Procedurally, *Franklin* involved a motion to suppress, 841 S.W.2d at 640, where the State had the burden of going forward with the evidence and the risk of non-persuasion, and was required to show, by a preponderance of the evidence, that the motion to suppress should be overruled, *Monath*, 42 S.W.3d at 648. In seeking to meet its burden, the State in *Franklin* had the opportunity to develop the record regarding the dispatch and the officer's reasonable suspicion for the stop and search, but failed to do so. *Franklin*, 841 S.W.2d at 644. In the present case, Defendant did not file a motion to suppress the evidence found in the search of his vehicle. Had Defendant done so, the State would have had the opportunity to develop the record along with the burden to show the trial court by a preponderance of the evidence that the motion to suppress

8

should be overruled. *Monath*, 42 S.W.3d at 648. Likewise, the trial court would have had an opportunity to rule on the motion. Instead, Defendant chose to address the issue for the first time on appeal, when the State no longer had the opportunity to develop the record, by arguing that the trial court should have *sua sponte* intervened in his defense and excluded the evidence. We will not find a trial court plainly erred for failing to assist defense counsel in the trial of a case on a *sua sponte* basis. *State v. Ferguson*, 679 S.W.3d 60, 67 (Mo. App. E.D. 2023).

From the record, the evidence adduced at trial was that the officer: (1) received an initial dispatch of actual criminal activity, namely that shots were fired; (2) received a description of a vehicle suspected in the shooting; (3) observed a vehicle matching the description of the suspect vehicle, driven by Defendant in the area near the shooting; and (4) learned that other officers responding to the scene confirmed that shots, in fact, were fired into occupied houses in the area. We find no Fourth Amendment violation with the initial stop of Defendant's vehicle. The officer had reasonable suspicion to believe Defendant was involved in criminal activity, and was therefore, objectively justified in stopping Defendant's vehicle to further investigate.

*Search of Defendant's Vehicle*

We further find that the officer's search of Defendant's vehicle was proper. The U.S. Supreme Court has recognized that investigatory stops involving suspects in vehicles are especially dangerous for police officers. *Lindsay*, 599 S.W.3d at 536-37. An officer's reasonable belief, based on specific and articulable facts taken together with the rational inferences drawn from those facts, can reasonably justify the officer's belief that the suspect is dangerous and may gain immediate control of a weapon. *Id.* at 537. Under such circumstances, a search of the vehicle's passenger compartment is permissible when limited to those areas where a weapon may be placed or hidden. *Id.* And if, while conducting a legitimate *Terry* search of the interior of

9

the vehicle, an officer should discover contraband other than weapons, the officer cannot be required to ignore the contraband, and the Fourth Amendment does not require its suppression. *Id*. at 537-38.

In the present case, the officer had reasonable suspicion to conduct an investigatory stop of Defendant because his vehicle, a black Tahoe, matched the description of the suspect vehicle involved in "shots fired" into occupied houses in the area. Once back-up arrived, the officer informed Defendant he would search the vehicle "because of the circumstances." At this point of the stop, we find the facts articulated by the officer and the rational inferences drawn from the facts demonstrate that the officer was investigating a nearby shooting incident and also had a reasonable belief that Defendant may have posed a danger through access to a weapon inside the vehicle. *See id*. at 536-37 (recognizing that investigatory stops involving suspects in vehicles are especially dangerous for police officers). The officer articulated sufficient facts that justified a protective search of Defendant and the vehicle.

When the officer asked Defendant whether there were "guns or anything" in the vehicle, Defendant replied he had drugs. The officer conducted a protective search, and although he found no weapon in the vehicle, he found scales in the driver's side door and, located directly behind the driver's seat and within Defendant's reach, a plastic bag containing "large rocks" of a crystal substance that proved to be methamphetamine. The foregoing evidence was admitted at trial without objection. The officer was not required to ignore the drugs while conducting a legitimate search. *Id*. at 537-38. The officer's protective search for weapons that uncovered the methamphetamine and the scales readily passes Fourth Amendment muster under our *de novo* review. *Id*.

### Conclusion

Based on the foregoing, we find the officer had reasonable suspicion to stop Defendant and investigate his involvement in the reported shooting. Further, the officer's discovery of methamphetamine and scales resulted from a proper search of Defendant's vehicle.

Having reviewed the record on appeal, we conclude the trial court did not commit evident, obvious, and clear error when it did not *sua sponte* exclude the evidence that Defendant now disputes for the first time on appeal. Defendant's claim does not facially establish substantial grounds to believe that manifest injustice or miscarriage of justice occurred. Therefore, we decline to proceed further with plain-error review. *Edmond*, 675 S.W.3d at 244. We affirm the trial court's judgment.

Angela T. Quigless, J.

James M. Dowd, P. J. and Cristian M. Stevens, J. concur.

11